Laura **KRAEMER**, Plaintiff–Appellant,

v.

**GRANT COUNTY, Herbert Hottenstein, William Baker, Betty Baker, et al., Defendants–Appellees.**

**Appeal of Mark D. LAWTON.**

No. 88–3519.

United States Court of Appeals, Seventh Circuit.

Submitted Nov. 28, 1989.[1]

Decided Jan. 9, 1990.

**1.** After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Fed.R. App.P. 34(a); Circuit Rule 34(f). Appellant has filed such a statement. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record.

Mark Lawton, Kammer & Lawton, Portage, Wis., for plaintiff.

Robert O. Burr, Madison, Wis., for defendant-appellee.

Mark D. Lawton, Portage, Wis., pro se.

Before WOOD, Jr., CUDAHY and RIPPLE, Circuit Judges.

PER CURIAM.

Attorney Mark D. Lawton appeals from the district court's order requiring him to pay $3000 to William and Betty Baker, defendants below and appellees here, as a sanction under Fed.R.Civ.P. 11 for having filed a lawsuit on behalf of his client without first having made reasonable investigation into the facts of the case. We hold that under the circumstances presented here the imposition of sanctions was erroneous and we reverse.

Lawton was contacted in the late summer of 1986 by Laura Kraemer. Kraemer told him that Herbert Hottenstein, the sheriff of Grant County, Wisconsin, had conspired with the Bakers to evict her from her home and steal her belongings. Lawton asked Kraemer to write a detailed letter explaining what had happened. In her letter, Kraemer gave this account of events relevant to this appeal: She and her fiance Steven Baker had been living together for about three years. In late April 1986, they discovered that Kirk and Cindy Novinski had a house for rent in rural Grant County, and they chose to take it. The Novinskis demanded a $150 security deposit and $150 per month in rent, and Steven Baker agreed to pay it. A couple of days later Kraemer gave the Novinskis $100 and the Novinskis gave her the key. The rest of the rent was never paid because Steven Baker was killed in a work-related accident on May 8. The funeral took place on May 10. At the funeral, Steven Baker's parents, Bill and Betty Baker, asked Kraemer if they could come over to the house to pick up Steven Baker's belongings the next day. Kraemer reluctantly gave her permission. Before going home, Kraemer stopped at a friend's house. When she finally returned home she found that almost everything had been taken from the house, and she found a note from Betty Baker stating that they had taken the things they wanted. Kraemer immediately notified the sheriff's department.

The sheriff's officer on duty called the Bakers and told them to return what they had taken by 10:30 the next morning, May 11. At that time, however, Sheriff Hottenstein himself came out to Kraemer's house and said that the Bakers were within their rights. While Kraemer and the sheriff were talking, the Bakers arrived. Sheriff Hottenstein ordered Kraemer to turn her car keys and ownership papers over to the Bakers, telling her that the car was both unregistered and unsafe, and that the Bakers would make sure the car was not driven in that condition.

Kraemer went to visit her mother in another city for a few days. When she returned, she found a note on the front door, signed by a sheriff's deputy, which read: "To whom it may concern—Nothing is to

be removed from the premises until you contact Grant County Sheriff's Department." The electricity had been cut off on orders of the Bakers. Kraemer went to the utility company and ordered service restored. When she got back to the house, on June 4, she met the landlord, Kirk Novinski. She tried to give him the money owing on May's rent, but Novinski refused to take it, telling her to hold off until she could straighten things out with the Bakers. At that time, someone from the utility company arrived to hook up the electricity, but Novinski objected. Kraemer convinced the man to leave the power on at least for the night. That evening, Sheriff Hottenstein returned and told Kraemer that she had to leave the house right then. The next day, the sheriff and the Bakers watched as Kraemer moved her belongings out of the house.

On July 29, when Kraemer was five months pregnant, she had another brush with the law. She was arrested by a Wisconsin State Patrol officer for driving with a defective brakelight. She was unable to produce a valid driver's license (the trooper knew the license was on file with the Wisconsin Department of Transportation), or the $33 bond required for that offense, and she was jailed for several hours until someone posted bond for her.

On the strength of this letter, Lawton made an administrative claim against the county on Kraemer's behalf for damages. When the claim was denied, Lawton hired (at his own expense) a private investigator to look into the allegations Kraemer had made. The investigator's report is not in the record, but Lawton conceded that he was unable to confirm or to discredit any part of Kraemer's story except that he had been given a statement by one of the Bakers' relatives saying that she had been with the Bakers when they took property out of Kraemer's house, and that she felt that action was "wrong." The investigator reported that the potential defendants had been "hostile."

This is all the information Lawton had been able to gather when he filed this suit against the Bakers and Hottenstein (and others not involved in this appeal) on January 29, 1987, alleging violations of Kraemer's constitutional rights and seeking damages under 42 U.S.C. § 1983 and 28 U.S.C. § 1343. Both of these statutes require the plaintiff to show state action before recovery can be had. Many of the allegations of the complaint are undisputed. The complaint stated a claim sufficient to withstand a motion for dismissal under Fed.R.Civ.P. 12(b)(6). Through discovery it was learned, among other things, that at the time of the events charged in the complaint there had been lengthy and frequent telephone conversations between the Bakers and the sheriff's office. Lawton was not able, however, to produce through discovery sufficient facts with respect to state action to defeat the defendants' motion for summary judgment. This court affirmed the grant of summary judgment in an unpublished order, *Kraemer v. Grant County*, 870 F.2d 659 (7th Cir.1989), with one judge concurring specially to state that he considered the issue of state action to be a close one on summary judgment. It appeared that the sheriff played an active role in the dispute between the parties, although not necessarily an improper role.

Along with their motion for summary judgment, the Bakers requested that the court require Kraemer or Lawton to pay their legal fees in defending a frivolous or vexatious action under 42 U.S.C. § 1988. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). The district court held a hearing on the request on October 28, 1988, and found that an award of attorneys' fees was not proper in this case under § 1988 due to Kraemer's poverty, but also found that an award against Lawton personally was appropriate under Fed.R. Civ.P. 11. On November 10, 1989 the court ordered Lawton to pay $3,000 of the Bakers' total legal bill of about $8,000. The court ruled that Lawton should have known that there was no factual or legal basis for the allegation of state action at the time the complaint was filed. The award was less than the actual damages caused by his actions because Lawton is a fairly recent law school graduate, and had

done some investigation before filing Kraemer's complaint. Lawton filed a motion to amend findings under Fed.R.Civ.P. 52(b), which was denied on December 14, 1988. Lawton filed a timely notice of appeal and we reverse.

Under our decision *en banc* in *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928 (7th Cir.1989), our review of an order imposing Rule 11 sanctions (or refusing to impose them, *see Tabrizi v. Village of Glen Ellyn*, 883 F.2d 587 (7th Cir. 1989)) is deferential—we review only for abuse of discretion. But deferential review is different from no review at all, even when there is no controlling legal issue in the case. *Mars Steel*, 880 F.2d at 936. "Concerns for the effect on both an attorney's reputation and for the vigor and creativity of advocacy by other members of the bar necessarily require that we exercise less than total deference to the district court in its decision to impose Rule 11 sanctions." *In re Ronco, Inc.*, 838 F.2d 212, 217 (7th Cir.1988) (quoted with approval in *Mars Steel*). *See also Mars Steel*, 880 F.2d at 940–41 (Flaum, J., concurring) (no single abuse of discretion standard exists). In reviewing the imposition of sanctions under Rule 11, then, we will give deference to the decision of the district court, but with careful reference to the standards governing the exercise of the court's discretion and to the purposes Rule 11 is meant to serve.

In this case, our focus is on the reasonableness of Lawton's prefiling research into the facts of the case. Although the district court referred to Lawton's failure to establish a basis for the complaint in fact and in law, the legal problems drop out if his version of the facts was correct. If Sheriff Hottenstein was in fact conspiring with the Bakers to deprive Kraemer of her property, then there would be a remedy under 42 U.S.C. § 1983 for violation of Kraemer's civil rights. *See Dennis v. Sparks*, 449 U.S. 24, 27–28, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980). Absent the sheriff's involvement, of course, there is no state action and no legal basis for a federal claim. But Kraemer's claim ultimately failed because she could not establish the

necessary facts, not because the law did not provide a federal remedy for the wrongs she alleged in her complaint. Indeed, the complaint survived a Fed.R.Civ.P. 12(b)(6) motion for dismissal for failure to state a claim upon which relief could be granted. Therefore we need only determine whether the district court properly found that Lawton had not performed reasonable research into the facts of the case before filing the complaint.

It is not necessary that an investigation into the facts be carried to the point of absolute certainty. *Nemmers v. United States*, 795 F.2d 628, 632 (7th Cir.1986). The investigation need merely be reasonable under the circumstances. *S.A. Auto Lube, Inc. v. Jiffy Lube Int'l, Inc.*, 842 F.2d 946, 948 (7th Cir.1988). Relevant factors for the court to consider include:

> Whether the signer of the documents had sufficient time for investigation; the extent to which the attorney had to rely on his or her client for the factual foundation underlying the pleading, motion, or other paper; whether the case was accepted from another attorney; the complexity of the facts and the attorney's ability to do a sufficient pre-filing investigation; and whether discovery would have been beneficial to the development of the underlying facts.

*Brown v. Federation of State Medical Bds.*, 830 F.2d 1429, 1435 (7th Cir.1987). An analysis of these factors shows that it was error to conclude that Lawton's conduct in filing the complaint was sanctionable.

The key fact that Lawton and Kraemer had to establish was the sheriff's involvement in a conspiracy with the Bakers. "Because conspiracies are carried out in secret, direct proof of agreement is rare." *United States v. Koenig*, 856 F.2d 843, 854 (7th Cir.1988). We cannot require an attorney to procure a confession of participation in a conspiracy from one of the prospective defendants before filing suit—if there were such a confession, no lawsuit would be necessary. Lawton did all he reasonably could have done to investigate his client's account of events before the complaint was

filed. He hired a private investigator to interview the prospective defendants and to determine what had actually happened. The defendants refused to cooperate with the investigator. We cannot insist that a lawyer abandon his client's cause simply because the investigator was unable to obtain the cooperation of the prospective defendants.

When the defendants refused to cooperate voluntarily, Lawton had only two options: he could advise his client to give up, or he could file a complaint on her behalf and try to develop the necessary facts through discovery. Absent some official coercion, the defendants had proved unwilling to provide any evidence whatever relating to Kraemer's case, and their unwillingness was reflected in their hostile reactions to Lawton's investigator. No one else could be expected to have knowledge of the conspiracy. Until some other source of information became available, then, Lawton had to rely on his client for the factual foundation of the claim. There was simply no other source to which he could turn.

Once Lawton was armed with the coercive power of the federal courts to enforce the rules of discovery, he was able to get telephone records showing frequent and lengthy telephone conversations between the sheriff and the Bakers during May and June 1986, including a 22–minute conversation in the early morning of May 11, after Kraemer had reported to the sheriff's office that her house had been broken into, and just before Sheriff Hottenstein came out to the house to tell Kraemer that the Bakers had acted within their rights. Lawton was even able to get tapes of some later conversations between the sheriff and the Bakers, including one in which William Baker told the sheriff that "if we all stick together and find out she's lying then they'll call it [the lawsuit] off quick." [2] The particular facts that Lawton unearthed during discovery are irrelevant to the reasonableness of his filing the complaint, *Mars Steel,* 880 F.2d at 932 (focus of Rule 11 is on what should have been done before

filing rather than on results), but the fact that he had to use discovery to learn them is relevant. If discovery is necessary to establish a claim, then it is not unreasonable to file a complaint so as to obtain the right to conduct that discovery. "Rule 11 must not bar the courthouse door to people who have some support for a complaint but need discovery to prove their case." *Frantz v. United States Powerlifting Federation,* 836 F.2d 1063, 1068 (7th Cir.1987).

Rule 11 cannot be allowed to thoroughly undermine zealous advocacy. "The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." Advisory Committee Notes to 1983 Amendment to Fed.R.Civ.P. 11. This is especially so in civil rights cases involving unpopular clients. Lawton's client is a young woman who appears to be exceedingly unpopular with the authorities in Grant County, as indicated by the fact that she was jailed for a minor traffic offense. It may on occasion take the power of the federal courts to keep state officials from harassing unpopular and powerless citizens. If that is the case, a federal forum must be available to them. We cannot allow such officials to avoid their constitutional duties simply by stonewalling an investigator.

Lawton took all the steps he reasonably could have taken before filing suit to determine the truth of Kraemer's allegations. He should not have been sanctioned for turning to the judiciary, whose function is to find truth, when his own resources failed.

REVERSED.

---

**2.** Apparently this tape was not available at the time summary judgment was entered, and it was not considered by the district court or by this court in affirming on the merits.