PHOENIX AIRWAY INN
ASSOCIATES, Plaintiff,

v.

ESSEX FINANCIAL SERVICES, INC.,
et al., Defendants.

No. 89 C 1867.

United States District Court,
N.D. Illinois, E.D.

July 25, 1990.

Emil P. Caliendo, Chicago, Ill., for plaintiff.

Andrew B. David, William J. Gigler, Sugar, Freidberg & Felsenthal, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

On November 30, 1989 the court dismissed this case for lack of *in personam* jurisdiction over defendants Essex Financial Services, Inc. ("Essex") and Raymond R. Kramer. (*See* Opinion at 8–9; 1989 WL 152664, 1989 U.S.Dist. LEXIS 14361.) The court deferred ruling on defendants' request for sanctions under Federal Rule of Civil Procedure 11. (Opinion at 8.) Defendants now have brought a separate motion for Rule 11 sanctions, to which plaintiff Phoenix Airway Inn Associates ("Phoenix") has filed a 27–page response, complete with supporting affidavits.

Rule 11 states in relevant part:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record.... *The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law,* and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.P. 11 (emphasis added).

Plaintiff's attorney, Emil P. Caliendo, signed the complaint filed in this case. (*See* Complaint at 4.) Thus, Rule 11 is concerned with Mr. Caliendo's behavior— whether before filing the complaint he made reasonable inquiry into the facts and law supporting the complaint's allegations of jurisdiction. (*See* Complaint, ¶¶ 5–6.) The evidence before this court demonstrates that plaintiff's attorney failed to make such pre-filing inquiry.

First, the complaint itself contains no indication that, before filing, plaintiff's counsel reasonably investigated whether this court had *in personam* jurisdiction over defendants. Nowhere does the complaint allege facts supporting this court's *in personam* jurisdiction: the complaint mentions no travel by defendants to Illinois, no business solicitation by defendants in Illinois, no phone calls placed or mail

sent by defendants to Illinois, and no contract consummated or performed in Illinois.

Although such detailed allegations in the complaint may not be necessary to withstand a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), their presence would have been strong evidence of counsel's pre-filing inquiry into the relevant jurisdictional facts of this case.

After counsel's filing of the complaint defendants moved to dismiss it for this court's lack of *in personam* jurisdiction. It is certain that had plaintiff's counsel properly investigated the facts relevant to this court's jurisdiction *prior* to filing the complaint, the facts would not have been difficult to marshall and to present in response to defendants' motion.

Instead, in response to a motion that threatened to end this litigation before this court, counsel submitted a memorandum supported by a single affidavit—the affidavit of Peter Fricano, plaintiff's sole general partner. (*See* Fricano Aff. ¶ 1, attached to Response to Motion to Dismiss ("First Fricano Aff.").) As detailed more fully in this court's previous opinion, in his affidavit Mr. Fricano offered no facts supporting assertion of this court's *in personam* jurisdiction over defendants: he never stated that defendants initiated in any way the contract at issue or that the contract either was formed or was to be performed in Illinois. (*See* Opinion at 5–6; First Fricano Aff.)

Although Mr. Fricano stated that "many crucial communications between plaintiff and defendants occurred between Illinois and Texas, including negotiations pertaining to the amount of the loan," he did not state that defendants initiated these communications—e.g., by telephoning or mailing information to plaintiff in Illinois. (*See* Opinion at 6–7; First Fricano Aff. ¶ 5.) If plaintiff's counsel had reasonably investigated Illinois law he would have known that determination of who called or mailed information to whom would be critical to this court's resolution of whether it had *in personam* jurisdiction over defendants. (*See* Opinion at 6–7.) If before filing the complaint in this case plaintiff's counsel had properly investigated the necessary facts and relevant law supporting the jurisdictional allegations of the complaint, he undoubtedly would have presented them to the court in response to defendants' properly supported motion to dismiss.

Now, over a year after filing the complaint and over nine months after responding to defendants' motion to dismiss, in response to defendants' motion for sanctions counsel for plaintiff finally comes forward with affidavits which he claims demonstrate that this court had *in personam* jurisdiction over defendants all along. Specifically, counsel presents to this court a second affidavit by Mr. Fricano, and an affidavit from a new party—Jerry Del Giudice, attorney for Centrum Financial Group, the business entity which apparently referred plaintiff's loan package to defendant Essex in Texas, precipitating this lawsuit.

Most of the statements in these affidavits, however, are either vague or irrelevant, further convincing this court that plaintiff's counsel failed to make reasonable inquiry before filing the complaint.[1] Other statements, however, might have been relevant to this court in ruling on defendants' motion to dismiss eight months ago.[2] None of the statements, though, help counsel here.

---

1. For example, Mr. Fricano stated that defendants "contacted plaintiff and informed plaintiff that defendants would be processing plaintiff's loan." (Fricano Aff. ¶ 4, attached to Pl. Response to Motion for Sanctions ("Second Fricano Aff.").) Critically, however, Mr. Fricano fails to state that he was in Illinois at the time. Indeed, given that he has been a resident of the state of Arizona since May of 1987, a fact which plaintiffs only now volunteer, defendants most likely contacted Mr. Fricano in Arizona—a fact irrelevant to this court's *in personam* jurisdiction over defendants.

Similarly, Mr. Del Giudice stated that Centrum, located in Illinois, distributed plaintiff's loan package to Essex, located in Texas. (Del Giudice Aff., ¶¶ 1, 6.) This hardly evidences initiation or performance *by Essex* of a business transaction in Illinois.

2. For example, Mr. Fricano stated that an employee of the Centrum Financial Group ("Centrum") in Schaumburg, Illinois told him that

This is not a motion for reconsideration. It is a motion for sanctions. At issue is whether plaintiff's counsel made reasonable *pre-filing* inquiry into the jurisdictional allegations of the complaint. Fed.R. Civ.P. 11. As the Seventh Circuit Court of Appeals has explained, "[t]he objective component [of Rule 11] is that a paper filed in the best of faith, by a lawyer convinced of the justice of his client's cause, is sanctionable if counsel neglected to make 'reasonable inquiry' *beforehand."* *Mars Steel Corp. v. Continental Bank N.A.,* 880 F.2d 928, 932 (7th Cir.1989) (emphasis supplied).

The purpose of this timing requirement is obvious: counsel should not be permitted—without reasonable investigation—to file pleadings, motions, or other papers, and then, only if challenged (and after imposing substantial costs on the opposing party), be allowed to scramble to find facts and law justifying his original filing. Permitting only post-filing inquiry would undermine Rule 11's goal of checking abuses in the signing of pleadings. *See* Fed.R. Civ.P. 11, Notes of Advisory Committee On Rules, 1983 Amendment.

Thus, counsel's detailed explanation of efforts to investigate the relevant jurisdictional facts *while defendants' motion to dismiss was pending* does not excuse his failure to reasonably investigate these facts *before filing* the complaint. (*See* Pl. Response to Sanctions Motion at 4, 7–8, 20; Second Fricano Aff., ¶ 9–11.) On the contrary, these post-filing efforts (not even made, by the way, by counsel, but rather by his client) further confirm that plaintiff's counsel failed reasonably to ascertain the appropriate jurisdictional facts before filing the complaint in this case.

Counsel for plaintiff need not have carried his pre-investigation inquiry to the point of absolute certainty. *Kraemer v. Grant County,* 892 F.2d 686, 689 (7th Cir. 1990). His inquiry need only have been reasonable under the circumstances. *Id.* Plaintiff's counsel has been given every opportunity to present evidence that he properly investigated his jurisdictional allegations *before* he signed and filed the complaint in this case. He has presented no such evidence. There is no indication that counsel lacked sufficient time for investigation, that his client mislead him regarding the factual foundation for the complaint, or that the complexity of the facts hindered in any way his ability to perform pre-filing investigation. *See Insurance Benefit Administrators, Inc. v. Martin,* 871 F.2d 1354, 1358 (7th Cir.1989). Defendants' motion for Rule 11 sanctions must be granted.

Now that the court has determined that a Rule 11 sanction is necessary in this case, it must calculate the amount of that sanction. This court finds that an award of attorneys' fees should be awarded for counsel's violation of Rule 11 in alleging jurisdiction in the complaint in this case. *Cf. Textor v. Board of Regents of Northern Illinois University,* 87 F.R.D. 751, 754 (N.D.Ill.1980).

Defendants have documented the attorneys fees generated and billed to Essex in responding to plaintiff's complaint. According to this documentation, three members of defendants' Chicago law firm generated fees in this case: Andrew B. David, a partner of the firm, conducted factual investigation and drafted the motion to dismiss; William J. Gigler, an associate of the firm, was primarily responsible for draft-

---

defendant Essex received plaintiff's loan package because Essex was "an associate mortgage company of Centrum and that Centrum did business with defendant Essex on a regular basis." (Second Fricano Aff., ¶ 5.) Although Mr. Fricano never stated that Essex contacted Centrum about the loan package, he did state that "Essex initiated some calls to Illinois between April 1988 and early 1989." (Second Fricano Aff., ¶ 4.)

Similarly, Mr. Del Giudice stated that several mortgage brokers and mortgage houses, "including Essex, to whom Phoenix's loan package was distributed to [sic], actively solicited this type of business from Centrum either by telephone request, by written request, or by sending Centrum solicitation material, and for that reason were sent the loan package." (Del Giudice Aff., ¶ 7; *but see* Kramer Aff. at ¶ 2, attached to Sanctions Reply ("Second Kramer Aff.") ("Essex was never a correspondent or an associate of Centrum ... or any other mortgage company located in Illinois. Essex has never solicited business from Centrum located in Illinois, either by letter, telephone or mailing of solicitation material.").)

ing the affidavits and legal memoranda in support of the motion to dismiss; and Joshua L. Portman, a third year law student at Northwestern University School of Law, performed legal research in connection with the Rule 11 issues. (David Aff., ¶ 3.) The billing rate for these three individuals was $165.00, $115.00, and $60.00 per hour, respectively.[3] (David Aff., ¶ 3.) The court finds these hourly rates reasonable given the rates charged for similar work by attorneys in this district.[4]

Not all of the billing entries submitted to this court, however, are appropriate. For example, defendants have failed to specify how several of the entries relate specifically to legal work performed in response to the filing of plaintiff's complaint. Although the court could perhaps guess the relevance of many of these vague entries, it would be both difficult and improper to do so. Thus, entries 1, 4–6, 12, 20, 24, 26, and 43 are stricken.[5]

Several other entries are redundant. While the court understands that attorneys often choose to divide up work among themselves, doing so may result in duplication of effort and excessive intra-office conferences not properly charged as a Rule 11 sanction in a relatively simple case like this one. Thus, entries 14, 15, 21, 28, 35, 39, 40 and 42 also are stricken.

Entries 31 through 33 must be stricken for a different reason. These three entries—one dated August 6 and two dated August 7, 1989—purportedly relate to revising, discussing, and filing defendants' reply to plaintiff's motion to dismiss. However, defendants filed their reply with this court on August 5, 1989. Entries 31, 32 and 33 are stricken.

Entries 36, 38, 41, 44, 45, 46, 48 and 54 seek fees for legal research and drafting of defendants' motion and supporting memorandum for sanctions. Defendants seek a total of $845.00 in fees for this work, which resulted in two documents: a four-paragraph motion for sanctions based upon facts easily accessed from earlier filings and this court's opinion relating to the motion to dismiss, and a four-page memorandum in support of that sanctions motion, citing two new cases and again arguing facts previously known to this court.

This court does not disparage, it appreciates both the quality and the brevity of defendants' motion and memorandum. Legal research and drafting associated with the straightforward motion, however, was excessive. Hence, the court cuts in half the billings for the above listed entries, resulting in a total allowable charge of $422.50.

Finally, defendants also include the affidavit of Allen Landerman, a partner in the law firm Landerman, Dunlap & Jacobs in Dallas, Texas. (Landerman Aff., ¶ 1.) Mr. Landerman states that he performed $390.00 in legal work in connection with responding to the complaint in this matter. (Landerman Aff., ¶ 3.)

However, the work performed by Mr. Landerman consisted of telephone conferences discussing the case either with the client, Mr. Kramer, or with defendants' Chicago counsel.[6] Given the extensive time billings submitted by defendants' Chicago counsel, there is no indication that Mr. Landerman's consultations were reasonably necessary to respond to plaintiff's complaint. Mr. Landerman's billings also are stricken.

---

**3.** After January 1, 1990 the hourly rate for Mr. David and Mr. Gigler increased to $170 and $125 respectively. (David Aff., ¶ 3.)

**4.** Plaintiff's counsel challenges the reasonableness of these rates, but presents no evidence to the contrary.

**5.** At plaintiff's suggestion, this court has numbered each billing entry in paragraph 3 of Mr. David's affidavit from 1 through 58 for convenience.

**6.** On one occasion Mr. Landerman billed for something other than a phone call. A listing for July 5, 1989 states that Mr. Landerman drafted an affidavit for Ray Kramer to sign regarding the motion to dismiss in Chicago. However, Mr. Gigler stated that he drafted Mr. Kramer's affidavit. (*See* Entry 22.) Although both attorneys may have drafted portions of Mr. Kramer's affidavit, this is unclear from the record. Mr. Landerman's billing for this service is stricken.

The court finds that the remaining entries documented by defendants, which total $2539.00 in attorneys' fees, constitute an appropriate Rule 11 sanction.

## CONCLUSION

For the reasons stated in this memorandum opinion and order defendants' motion for Rule 11 sanctions is GRANTED. A sanction of $2539.00 is imposed against plaintiff's counsel, Emil P. Caliendo.