BEVERLY GRAVEL, INCORPORATED
and East Riverdale Gravel Company,
Plaintiffs–Appellees,

v.

Louis J. DiDOMENICO and Humbert
DiDomenico, also known as Bert
DiDomenico, Defendants–Appellants.

No. 89–1939.

United States Court of Appeals,
Seventh Circuit.

Argued March 6, 1990.

Decided July 27, 1990.

**224**

Warren R. Fuller, Chicago, Ill., for plaintiffs-appellees.

Benjamin P. Hyink, Paul T. Falk, Drugas, Maione, Morgan & Hyink, Chicago, Ill., for defendants-appellants.

Before WOOD, Jr., and KANNE, Circuit Judges, and PELL, Senior Circuit Judge.

PELL, Senior Circuit Judge.

The controversy underlying this appeal was resolved when the district court granted summary judgment in favor of Louis J. DiDomenico and Humbert DiDomenico, defendants-appellants, on a RICO claim and dismissed the pendant claims. Encouraged by a decisive district court opinion, Louis and Humbert sought sanctions against Beverly Gravel, Inc., and East Riverdale Gravel Co., plaintiffs-appellees, under Rule 11 of the Federal Rules of Civil Procedure. The district court declined to impose sanctions and denied defendants' subsequent motion to reconsider. Defendants appeal on the sanctions issue.

Beverly Gravel, Inc. (Beverly) and East Riverdale Gravel Co. (East Riverdale) are sister companies in the business of supplying aggregate materials. Louis and Humbert DiDomenico are the incorporators, directors and officers of Dadco Materials Co. (Dadco), a broker of aggregate materials. Dadco was incorporated in October 1980 and began to purchase minerals on credit from Beverly and East Riverdale in November 1980. Although Dadco fell behind in its payments as early as June 1981, Dadco and plaintiffs transacted business through the spring of 1985 when plaintiffs refused to extend Dadco any more credit. Dadco made in excess of one thousand separate purchases from plaintiffs over the course of its 4½ year life. On December 31, 1985, Dadco filed for bankruptcy still owing Beverly and East Riverdale a total of $78,500.

Beverly and East Riverdale filed a complaint on October 31, 1985 in which they alleged that defendants, through the enterprise of Dadco, engaged in a pattern of racketeering activity aimed at defrauding them of money, materials and business. After two years of discovery, defendants moved for summary judgment, alleging that Beverly and East Riverdale were attempting to turn a collection case against the officers of a bankrupt company into a civil RICO action. The district court granted summary judgment on the RICO claim. The pendant claims were dismissed without prejudice.

Subsequently, defendants filed a petition for attorney's fees under Rule 11 which Judge Norgle denied on February 8, 1989. Defendants then filed a motion to reconsider which the district court denied on April 5, 1989. Defendants appeal from the district court's refusal to impose sanctions,[1] arguing that plaintiffs' complaint is frivolous in two respects. First, defendants assert that the allegations in the complaint were not supported by the evidence, and

---

1. At oral argument, the court asked the parties to address the question of whether the court had jurisdiction to hear the appeal since the district court failed to enter a separate final judgment on the docket as required by Rule 58, Fed.R. Civ.P. Upon consideration of the factors set out in *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 384–87, 98 S.Ct. 1117, 1119–21, 55 L.Ed.2d 357 (1978), we conclude that the parties have waived the Rule 58 requirement and that we have jurisdiction.

thus counsel failed to make a reasonable investigation to determine whether the allegations were well-grounded in fact. Second, defendants assert that even if the allegations were true, they would not support a RICO violation, and thus plaintiffs failed to make a reasonable inquiry into the factual and legal requirements necessary to support a RICO claim.

In *Mars Steel Corp. v. Continental Bank N.A.*, we noted:

> [B]ecause the trial court alone has an intimate familiarity with the relevant proceedings, its decision whether counsel has conducted the kind of inquiry required by Rule 11 and taken a position reasonable in light of the facts and governing law is reviewable only where there has been an abuse of discretion.

880 F.2d 928, 933 (7th Cir.1989) (quoting *R.K. Harp Inv. Corp. v. McQuade*, 825 F.2d 1101, 1103 (7th Cir.1987)). Although our review of the district court's decision is deferential, we give "careful reference to the standards governing the exercise of the court's discretion and to the purposes Rule 11 is meant to serve." *Kraemer v. Grant County*, 892 F.2d 686, 689 (7th Cir.1990).

"Rule 11 imposes an affirmative duty of reasonable investigation on an attorney signing any paper." *Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 751 (7th Cir.1988). What constitutes a reasonable pre-filing investigation depends on the circumstances of each case; however, this court has identified several factors bearing on whether an investigation was objectively reasonable:

> [W]hether the signer of the documents had sufficient time for investigation; the extent to which the attorney had to rely on his or her client for the factual foundation underlying the pleading, motion or other paper; whether the case was accepted from another attorney; the complexity of the facts and the attorney's ability to do a sufficient pre-filing investigation; and whether discovery would have been beneficial to the development of the underlying facts.

*Id.* at 752.

Not only must an attorney conduct a reasonable inquiry into the facts, but the attorney must also conduct a reasonable inquiry into the relevant law. *See Brown v. Federation of State Medical Bds.*, 830 F.2d 1429, 1435 (7th Cir.1987). We must determine whether counsel's actual arguments were reasonable in light of the relevant facts and law, not whether reasonable arguments could have been advanced in support of counsel's position. *In re Ronco*, 838 F.2d 212, 218 (7th Cir.1988).

To establish a civil RICO case, a plaintiff must prove "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985) (footnote omitted). Racketeering activity includes the predicate act of mail fraud which was the only predicate act alleged in this case. Mail fraud in turn requires proof of a scheme to defraud plus use of the mails. *See Mortell v. Mortell Co.*, 887 F.2d 1322, 1325 (7th Cir.1989). To show a scheme to defraud, plaintiffs alleged that defendants engaged in the following fraudulent acts: (1) resold the materials they purchased on credit from Beverly and East Riverdale in a way that would prevent plaintiffs from tracing and retrieving the materials or from seeking recourse under the Illinois Mechanics' Lien Act in the event of nonpayment; (2) prevented them from enforcing their lien rights by refusing to disclose where the materials had been delivered; (3) provided lien waivers to buyers thereby fraudulently waiving plaintiffs' lien rights; (4) drew extraordinary salaries, gave themselves salary increases when Dadco was losing money and did not document these actions in the corporate minutes or report these actions to plaintiffs; (5) caused Dadco to repay debts to themselves in full while only paying plaintiffs in part; (6) promised to pay plaintiffs, but did not; (7) misrepresented the company as a partnership on their credit application; and (8) injured other unidentified companies. Defendants argue that because the district court found that the evidence did not support plaintiffs' characterization of these various acts as fraudulent or their theory

of a scheme to defraud, plaintiffs' conduct in bringing the RICO suit was unreasonable and sanctionable.

In its order denying the motion to reconsider, the district court noted that two factual allegations were not supported by the evidence, *i.e.*, that the defendants (3) fraudulently waived plaintiffs' lien rights and (8) injured other unidentified companies, but nonetheless concluded that "[t]hese two allegations comprised a small and unimportant portion of plaintiffs' pleadings.... [W]ithout more they do not rise to the level of sanctionable conduct." The district court concluded that the remaining factual allegations "are not examples of factual statements ... with no reasonable basis, but rather are examples of weak attempts to characterize facts as evidence of fraud."

■ To substantiate their allegation that "other suppliers of mineral products, both known and unknown" were injured by defendants' fraudulent scheme, plaintiffs identified Road Materials Corporation as one of these injured suppliers. Discovery revealed that Dadco had paid Road Materials in full in 1983, and thus Road Materials had not been injured by the alleged scheme. Thus, it appears that this allegation was without support. This alone does not warrant sanctions because what is key is that the fact that Road Materials was not a victim of Dadco's alleged fraudulent scheme did not come to light until post-filing discovery.

■ Counsel relied on information from his clients in making this allegation. It appears that plaintiffs knew prior to filing that Dadco was a "problem" account for Road Materials. This was sufficient to support the filing of the complaint. The details of Road Materials' relationship with defendants and the status of its accounts receivables, as well as those of the other suppliers which Dadco could have allegedly defrauded, are not readily ascertainable upon pre-filing investigation. It is not unreasonable to file a complaint so as to obtain the right to conduct discovery where that discovery is necessary to establish a claim. *Kraemer*, 892 F.2d at 690. Because the focus under Rule 11 is on what

counsel knew at the time the complaint was filed, not what subsequently was revealed in discovery, *see id.*, the district court did not abuse its discretion in concluding that this did not rise to the level of sanctionable conduct.

■ Defendants argue that Beverly and East Riverdale should have withdrawn their complaint because evidence that Road Materials was not damaged weakened their case. Rule 11 does not oblige counsel to amend the complaint as new evidence surfaces. *See Pantry Queen Foods, Inc. v. Lifschultz Fast Freight, Inc.*, 809 F.2d 451, 454 (7th Cir.1987). "The particular facts ... unearthed during discovery are irrelevant to the reasonableness of [the] filing [of] the complaint." *Kraemer*, 892 F.2d at 690 (citing. *Mars Steel*, 880 F.2d at 932).

Plaintiffs also alleged that defendants fraudulently waived plaintiffs' lien rights. The evidence did show that plaintiffs executed lien waivers, and to this extent there is factual support for the allegation. What plaintiffs did, however, is misconstrue the legal effect of the lien waiver. By executing the waivers, defendants only waived their own rights; they did not purport to waive plaintiffs' rights. The district court did not abuse its discretion in concluding that this did not rise to the level of sanctionable conduct.

■ As for the other factual allegations of the complaint, the district court concluded that they were not without a reasonable factual basis, but were merely weak attempts to characterize them as evidence of fraud. For example, the allegation that defendants (4) drew extraordinary salaries, gave themselves salary increases when Dadco was losing money and did not document these in the corporate minutes or report these actions to plaintiffs is true, except, that is, for the characterization of the salaries as extraordinary. Defendants each drew salaries of approximately $21,000. The same can be said for allegations (5), (6) and (7).

It is a much closer question whether allegations (1) and (2) are well-grounded in fact. As for allegation (1), it is true that

defendants did not require its customers to disclose where the materials were being delivered. In this sense, defendants did sell materials in a way that would prevent plaintiffs from tracing and retrieving the materials or from pursuing their lien rights; however, plaintiffs could have requested a delivery address before allowing the materials to leave their gravel pits. Thus, plaintiffs themselves were in part responsible for foreclosing their own rights to recover in case of nonpayment. As for allegation (2), it is true that defendants did not disclose where the materials had been delivered, but there is no indication that plaintiffs asked for this information. The only evidence is that plaintiffs offered to help defendants collect from their delinquent customers, but defendants declined this help. The facts underlying allegations (1) and (2) were within plaintiffs' knowledge at the time of filing, yet the allegations of fraud have only a tenuous basis in fact. Consequently, these allegations border on the sanctionable.

Defendants rely on the strong language in the district court's order as support for their argument that plaintiffs should have been sanctioned. However, a decision to grant summary judgment is not dispositive of the issue of sanctions. *See Brown v. National Bd. of Medical Examiners*, 800 F.2d 168, 173 (7th Cir.1986) ("[T]he fact that the underlying claim was groundless does not necessarily mean that the appropriateness of sanctions under Rule 11 is an equally clear cut issue."); *see also Frazier v. Cast*, 771 F.2d 259, 262 (7th Cir.1985) (issue of what attorney knew at time of filing is separate from merits of lawsuit). To conclude that there was no evidence to support plaintiffs' characterization of defendants' acts as fraudulent, is not to conclude that those acts did not occur and thus that the complaint was not well-grounded in fact. While the district court thought that plaintiffs' attempts to characterize defendants' acts as fraudulent were implausible, it did not think that plaintiffs' position was frivolous or that their allegation that those facts constituted a RICO violation sanctionable. We cannot conclude that the district court abused its discretion.

Defendants also argue that plaintiffs failed to make a reasonable inquiry into the relevant law and to apply the facts of their case in the context of that legal framework. Specifically, defendants challenge the sufficiency of the complaint on the pattern element which requires a showing that the prohibited activities shared a common thread of continuity and relationship. Defendants seem to argue that there can be no continuity or relationship because the district court in granting summary judgment held that, at most, there was a single fraudulent act—defendants' misrepresentation on the credit application that Dadco was a partnership—which, together with their subsequent failure to disclose Dadco's corporate status, did not constitute a pattern of racketeering activity. The district court concluded that the totality of the evidence did not demonstrate a fraudulent scheme. Notwithstanding, in considering the sanctions question, the district court rejected the argument that there was an insufficient legal basis for plaintiffs' claim and noted: "RICO is extremely broad and undefined in scope, and was even more so at the time plaintiffs filed their RICO count. Plaintiffs' effort to take advantage of this fact was acceptable, satisfactory representation; it was not frivolous."

Defendants' argument is flawed because it relies on the hindsight provided by the district court's order to argue that the complaint did not reflect a reasonable inquiry into the law. The district court had the benefit of this court's decision in *Morgan v. Bank of Waukegan*, 804 F.2d 970 (7th Cir. 1986), when it evaluated plaintiffs' RICO claim. As discussed below, plaintiffs had little to guide them in pleading the pattern requirement. It is from this perspective that plaintiffs' complaint must be evaluated.

Prior to the Supreme Court's decision in *Sedima*, most courts, including the Seventh Circuit, required proof of two predicate acts within a ten-year period and a minimal showing that these acts were connected by some common scheme, plan or motive to establish a pattern. *See, e.g., United States v. Starnes*, 644 F.2d 673, 677–78

(7th Cir.), *cert. denied,* 454 U.S. 826, 102 S.Ct. 116, 70 L.Ed.2d 101 (1981); *United States v. Aleman,* 609 F.2d 298 (7th Cir. 1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980). Defendants argue that by the time plaintiffs filed their complaint, the United States Supreme Court, this court and United States District Court for the Northern District of Illinois had had an opportunity to address the pattern requirement and that plaintiffs should have known that they needed to plead continuity and relationship to show a pattern.

Defendants cite *Sedima S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), as having defined "pattern." The Supreme Court did not focus on pattern. Rather, it invalidated attempts to corral the use of RICO by superimposing certain requirements on the statute that were not supported by RICO's history, language or policy.[2] In a footnote, the Court suggested that the federal courts might curtail the overzealous use of civil RICO by developing a "meaningful" interpretation of the language of the statute itself which requires that the unlawful conduct form "a pattern of racketeering activity." *Id.* at 496 n. 14, 105 S.Ct. at 3285 n. 14. The Supreme Court noted various statements in the legislative history addressing the pattern requirement which suggest that while two acts are necessary, they may not be sufficient to establish a pattern. Other than citing a Senate report for the proposition that " '[i]t is this factor of *continuity and relationship* which combines to produce a pattern,' " the Court left it to the district courts and courts of appeals to develop the concept of pattern and provided little guidance to those fashioning RICO complaints at that time. *See id.*

Defendants also cite *Illinois Dep't of Revenue v. Phillips,* 771 F.2d 312 (7th Cir. 1985) and two district court decisions, *Graham v. Slaughter,* 624 F.Supp. 222 (N.D. Ill.1985) and *Northern Trust Bank/O'Hare v. Inryco, Inc.,* 615 F.Supp.

828 (N.D.Ill.1985) in support of their argument that there was sufficient case law interpreting the pattern requirement to put plaintiffs on notice that their claim had no legal basis.

Because the issue in *Phillips* was whether a state's department of revenue could file suit in federal court under RICO against a retailer who filed fraudulent state sales tax returns, the court did not focus on *Sedima* and the pattern requirement. In fact, the *Phillips* court disposed of the pattern requirement simply by stating, "[a] pattern of racketeering activity ... requires at least two acts of racketeering activity within a ten year period.... Because the statute defines 'racketeering activity' to include mail fraud, the defendants' mailing of nine fraudulent tax returns to the Illinois Department of Revenue over a nine month period constitutes a pattern of racketeering activity." *Phillips,* 771 F.2d at 313 (citing *United States v. Weatherspoon,* 581 F.2d 595, 602 (7th Cir. 1978)). Thus, *Phillips* provided little guidance regarding pattern, and plaintiffs could have reasonably concluded that the Seventh Circuit would decline to follow the *Sedima* dicta and continue to construe the pattern requirement to require "at least two acts of racketeering." The Seventh Circuit issued its first opinion addressing the pattern requirement on October 23, 1986 in *Morgan,* 804 F.2d 970, nearly a year after plaintiffs filed their complaint. To date, this court continues to "struggle[ ] to determine exactly what constitutes a 'pattern of racketeering activity.' " *Triad Assoc., Inc. v. Chicago Housing Auth'y,* 892 F.2d 583, 594 (7th Cir.1989) (citing *Jones v. Lampe,* 845 F.2d 755, 756 & n. 4 (7th Cir.1988) (listing cases addressing pattern requirement)).

As for defendants' reference to *Graham,* because this opinion was issued on November 27, 1985, it could hardly have guided plaintiffs since their complaint was filed on October 31, 1985. The United States Dis-

---

**2.** The Supreme Court held that there is no requirement that a plaintiff establish a "racketeering injury" as opposed to an injury from the predicate acts themselves. *Sedima,* 473 U.S. at 493–500, 105 S.Ct. at 3283–87. Nor is it a prerequisite to maintaining a private action that the defendant have been convicted of the predicate act or a RICO violation before a private action can proceed. *Id.* at 488–93, 105 S.Ct. at 3280–83.

trict Court for the Northern District of Illinois did, however, construe the *Sedima* footnote in several opinions before plaintiffs filed their complaint. While these opinions are in agreement that pattern requires "continuity plus relationship," they disagree as to what that precisely means. *Compare Northern Trust*, 615 F.Supp. 828 (even assuming that mailing of subcontract and of two separate sets of kickback payments involved use of mails, they implemented the same scheme, and a single scheme does not constitute necessary pattern) *with Trak Microcomputer Corp. v. Wearne Bros.*, 628 F.Supp. 1089 (N.D.Ill. 1985) (agreeing with *Northern Trust* that more than two acts of racketeering activity are necessary, but disagreeing that pattern cannot be established with respect to single fraudulent scheme).[3]

Defendants argue that since the district court held that, at most, their conduct comprised a single fraudulent act, a single fraudulent act cannot constitute a pattern even under the pre-*Sedima* cases which still required at least two predicate acts. Mail fraud was the predicate act alleged, and since mail fraud requires a scheme to defraud which the district court found implausible, this element could not be satisfied. Defendants' argument is enticing, but flawed. Defendants are improperly evaluating the complaint with the benefit of the hindsight provided by the district court's opinion.

In the complaint, plaintiffs alleged that defendants used the mails on numerous occasions to advance their scheme including using the mails to bill and collect from customers, but not to repay plaintiffs and other aggregate suppliers and using the mails to send Dadco's tax returns. Given the existing precedent considering each individual mailing to be a predicate act, it was objectively reasonable for plaintiffs to rely on defendants' use of the mails to establish the predicate acts and pattern of racketeering. *See, e.g., Phillips*, 771 F.2d at 313 (mailing of nine fraudulent tax returns over nine month period constitutes a pattern of racketeering); *United States v. Weatherspoon*, 581 F.2d 595, 601–02 (7th Cir.1978) (each mailing in furtherance of a scheme to defraud is a separate offense of mail fraud even if there is only one scheme involved). Plaintiffs' complaint alleged that the scheme was carried out over the period from approximately July 1984 to July 1985. They also alleged that defendants used the mails to collect and pocket monies from plaintiffs and various suppliers. This satisfies the relationship aspect of pattern in that the complaint alleged predicate acts involving the same type of misconduct committed closely in time. *See Medical Emergency Serv. Assoc. v. Foulke*, 844 F.2d 391, 395 (7th Cir.1988) (discussing relationship and continuity aspects of pattern). Plaintiffs also alleged that defendants injured other suppliers in the same way. This would seem to satisfy the continuity aspect of pattern. *See id.; see also Starnes*, 644 F.2d at 677–78 ("[R]acketeering acts must have been connected with each other by some common scheme, plan or motive so as to constitute a pattern and not simply a series of disconnected acts.").

Given that the practical implications of the pattern requirement were at best uncertain at the time plaintiffs filed their complaint, we do not think that plaintiffs' assertions regarding predicate acts and a pattern of racketeering were without a factual or legal basis. Furthermore, given that RICO is extremely broad, and by 1985 its use in reaching legitimate businesses involved in garden variety fraud skyrocketed,[4] we cannot conclude that the district

---

**3.** District court opinions which were written after plaintiffs' complaint was filed disagreed with *Northern Trust* and *Trak* and variously construed the pattern requirement. *See, e.g., United States v. Yonan*, 622 F.Supp. 721 (N.D. Ill.1985); *Graham*, 624 F.Supp. 222. Nor are the courts of appeals in agreement as to what constitutes a pattern. *See* Note, *The Pattern Requirement in Civil RICO Is Working: Case Law After Sedima*, 33 Vill.L.Rev. 205 (1988)

(discussing various interpretations of the pattern requirement).

**4.** *See Sedima*, 473 U.S. at 481 n. 1, 105 S.Ct. at 3277 n. 1 ("Of 270 District Court RICO decisions prior to this year, only 3% (nine cases) were decided throughout the 1970s, 2% were decided in 1980, 7% in 1981, 13% in 1982, 33% in 1983, and 43% in 1984") (citing *Report of the Ad Hoc*

court abused its discretion in finding that plaintiffs made a good faith argument for applying RICO to their case. Furthermore, given that the practical implications of the pattern requirement were at best uncertain, plaintiffs' complaint was not frivolous in arguing its factual allegations as a violation of RICO.

Plaintiffs filed their complaint soon after the United States Supreme Court decided *Sedima* and in the midst of attempts by the federal courts to construe the pattern requirement of RICO. Given the state of the law on this issue at the time plaintiffs' complaint was filed, their complaint evidences a reasonable inquiry into the law. Plaintiffs' factual assertions were sufficiently grounded in fact for purposes of Rule 11. Just because these facts were weakly characterized as evidence of fraudulent activity under RICO and plaintiffs lost on summary judgment does not in itself warrant sanctions. Accordingly, we affirm the judgment of the district court in its refusal to impose sanctions under Rule 11.

AFFIRMED.

*Civil RICO Task Force of the ABA Section of Corporation, Banking and Business Law 55*

