929 F.2d 703
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Michael R. BEHR, Plaintiff-Appellant,
v.
NATIONAL BANK OF COMMERCE and Mark Routh, Defendants-Appellees.
 No. 89-2452.
 United States Court of Appeals, Seventh Circuit.
 Submitted March 15, 1991.*
Decided April 4, 1991.
 
 Appeal from the United States District Court for the Western District of Wisconsin, No. 88 C 458, John C. Shabaz, Judge.
 W.D.Wis.
 AFFIRMED.
 Before POSNER, FLAUM and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Michael R. Behr appeals pro se from the district court's order requiring him and his attorneys to pay to National Bank of Commerce and Mark Routh, defendants-appellees, $53,141.49 as a sanction under Fed.R.Civ.P. 11 for having filed a lawsuit not supported by fact or law.
 
 
 2
 The controversy underlying this appeal arose out of Michael R. Behr's dissatisfaction with how defendants, the National Bank of Commerce (NBC) and Mark Routh, one of NBC's officers, handled its loans to him. NBC made several loans to Behr which were secured by the accounts receivables of Behr's business as a forensic economist.[1] At various times, Behr failed to make payment on the loans. On these occasions, NBC either renewed or refinanced the loans. On January 19, 1984, a loan in the amount of $21,740.21 was scheduled to come due. On January 12, 1984, NBC sent Behr a letter in which it requested that Behr meet certain preconditions if he wished to renew the note. NBC had not imposed these preconditions in the past. Behr did not meet the preconditions. After several unsuccessful attempts by both NBC and Behr to contact each other, NBC wrote to Behr and informed him that he was in default on the loan. Under the terms of the security agreement, this default also constituted a default on another loan. NBC thus declared the entire amount of both loans due and payable. NBC then directed its attorneys to start collection proceedings. NBC reduced the loans to judgment in state court and then proceeded to recover the amount of those judgments by directly contacting Behr's clients to collect from them the amounts they owed Behr. Although the loan agreement contained a provision that permitted NBC to waive any default without this action affecting its rights with regard to future defaults, Behr felt that NBC had treated him unfairly.
 
 
 3
 On May 25, 1988, Behr, alleging that the defendants had failed to inform him that NBC would exercise its rights under the contract upon his default, then filed this action on a theory of breach of contract, negligence and misrepresentation, among others. Behr sought damages of over one million dollars. Behr himself drafted the factual allegations of the complaint. His attorneys, Martin W. Hable and Bernt J. Hammarback, supplied the theories of recovery.
 
 
 4
 During the course of Behr's deposition, defendants learned that many of the allegations in the complaint had no apparent basis in fact and the theories of recovery were not supported by existing Wisconsin law, which controlled this diversity case. Consequently, Behr's counsel agreed to voluntarily dismiss several counts of the complaint after defendants pointed out that the action was frivolous, but refused to dismiss the case entirely. The defendants then moved for summary judgment and included a request for sanctions under Fed.R.Civ.P. 11. The district court, concluding that the allegations of the complaint were not supported in fact and that the legal arguments bordered on the absurd, granted the motion for summary judgment. Despite the court's critical view of the complaint, it declined to impose Rule 11 sanctions on the grounds that "the lack of Wisconsin law on all fours with the facts of this case makes sanctions ... inappropriate."
 
 
 5
 Defendants subsequently filed another request for Rule 11 sanctions under Rule 59(e) on the grounds that additional facts had surfaced which reflected on Behr's actions in filing the complaint. Upon reconsideration, the district court granted defendants' request for Rule 11 sanctions and noted that it had not realized the extent of Behr's "egregious conduct."
 
 
 6
 To aid it in determining the amount of the sanctions, the district court ordered the defendants to submit records of their expenses in defending against the action. The court gave Behr and his attorneys an opportunity to respond. The court then imposed sanctions in the amount of $29,497 upon Behr and his two attorneys, Hable and Hammarback, jointly and severally. The court imposed an additional amount of $23,644.49 upon Behr and Hable jointly and severally. The court limited attorney Hammarback's liability to those amounts that had accrued up until the time he withdrew from the case.
 
 
 7
 Behr, Hable and Hammarback each filed an appeal from the judgment imposing sanctions. Hable and Hammarback have since settled with the defendants and have voluntarily dismissed their appeals. Thus, only plaintiff Behr's appeal remains.
 
 
 8
 We review an order imposing sanctions for an abuse of discretion. See Mars Steel Corp. v. Continental Bank N.A., 880 F.2d 928, 933 (7th Cir.1989) (en banc). Although our review of the district court's order is deferential, we give careful attention to "the standards governing the exercise of the court's discretion and to the purposes Rule 11 is meant to serve." Kraemer v. Grant County, 892 F.2d 686, 689 (7th Cir.1990). Our focus is on whether the district court abused its discretion in concluding that the complaint was frivolous. When examining a complaint for frivolousness, a court must consider (1) whether the party or attorney made a reasonable inquiry into the facts, and (2) whether the party or attorney made a reasonable inquiry into the law. See Brown v. Federation of State Medical Bds., 830 F.2d 1429, 1435 (7th Cir.1987).
 
 
 9
 Behr raises several arguments on appeal, none of which convince us that the district court abused its discretion in imposing sanctions. First, Behr argues that the district court abused its discretion "when it made [its] determination [that the complaint was frivolous] based on a discovery (rather than trial) record which was under the control of the defendants." In evaluating a request for Rule 11 sanctions, the court's focus is on what the plaintiff and his attorney knew at the time of the filing of the complaint. See Frazier v. Cast, 771 F.2d 259, 262 (7th Cir.1985). What was later uncovered in discovery or what might have surfaced at trial is irrelevant. See Kraemer, 892 F.2d at 690 (citing Mars Steel, 880 F.2d at 932). The district court imposed sanctions because Behr admitted that when he filed the complaint, he knew that he had no factual basis for many of his allegations and believed, based on the advice of several attorneys, that the Bank had acted within its legal rights in dealing with him. Nonetheless, because Behr felt NBC had not acted fairly and in accord with their course of dealing with his other defaults, Behr persevered until he found an attorney who was willing to represent him, Hammarback.
 
 
 10
 We note that Behr is a sophisticated individual. He holds a Ph.D. in Economics and makes his living working for attorneys as a "forensic economist." He pursued this action even though he knew that many of the factual allegations of the complaint were groundless. This alone is sufficient to constitute a Rule 11 violation. See Brown, 880 F.2d at 1435. As for whether there was any legal basis for the claim, Behr consulted a number of attorneys who informed him that NBC had acted within its rights under the loan documents. Behr's deposition testimony makes clear that Behr did not want to believe this. Behr testified:
 
 
 11
 Q So as of May 25th, 1984 [the date the complaint was filed] it was your opinion that the bank was entitled to take all the steps that it actually took, is that correct?
 
 
 12
 A That was my opinion at that time, which I emphasize was not a legal opinion, but ... I thought, unbelievable as it may seem, maybe they can do that, I don't know.
 
 
 13
 .............................................................
 
 
 14
 ...................
 
 
 15
 * * *
 
 
 16
 Q And in that letter there is a p.s., and it says basically that you acknowledged that the National Bank of Commerce had not done anything in violation of your rights under the law, isn't that correct?
 
 
 17
 A Well, that seemed to be the opinion that I was getting from attorneys at that point, incredible as it was to me.
 
 
 18
 Despite the fact that "attorneys" were telling him that NBC acted within its legal rights, and thus that there was no legal basis for his suit, and that he knew that the complaint was not well-grounded in fact, Behr continued to pursue the case and ultimately to file a complaint. This is the prototypical situation that Rule 11 was designed to address. The district court did not abuse its discretion in imposing sanctions on both Behr and his attorneys.
 
 
 19
 Second, Behr argues that the district court abused its discretion when it refused to look beyond the law of Wisconsin or the law of the Seventh Circuit in imposing sanctions. Behr's argument misstates what actually happened in the district court. The district court did look to the law of other jurisdictions, but concluded that it was inapplicable. The district court stated:
 
 
 20
 The complaint does not reflect a plausible view of the law of the State of Wisconsin nor does it represent facts which would be likely to give rise to liability under existing precedent in any other jurisdiction. The complaint is a frivolous document rather than a good faith effort to extend, modify or reverse existing law.
 
 
 21
 Behr now tries to escape sanctions by arguing that the complaint was a good faith attempt to alter the law of lender liability in Wisconsin; however, nowhere has Behr acknowledged and discussed the force of existing Wisconsin law and presented a reasonable argument in support of its change. The district court nonetheless was indulgent and considered the cases Behr cited from other jurisdictions even though all Behr bothered to do was to include them in a string citation. The court readily distinguished these cases and did not abuse its discretion in concluding that the complaint did not reflect a good faith effort to alter existing Wisconsin law.
 
 
 22
 Third, Behr argues that the district court abused its discretion by failing to evaluate his complaint with reference to the Wisconsin Consumer Credit Act, Wis.Stat.Ann. Sec. 425.105. Even though plaintiff did not allege this act as a basis for relief in the complaint, the district court addressed it. The district court found it inapplicable because Behr's loans were business loans, and the act only covers consumer loans. The court also noted that even if it were to conclude that a business loan were covered by the act, Wisconsin case law specifically holds that the act does not cover single payment notes like Behr's, but only covers installment loans. The district court did not abuse its discretion in concluding that Behr's insistence that the act applied was frivolous.
 
 
 23
 Finally, Behr argues that the district court abused its discretion in imposing the amount of sanctions that it did. Behr suggests that the court should have imposed sanctions consistent with those imposed in Mars Steel. Behr's argument in support is simply that the sanctions in this case were thirty times that imposed in Mars Steel. He does not otherwise contest the way in which the district court arrived at the amount of sanctions.
 
 
 24
 There is no requirement that provides that a district court may only impose the "typical" amount of sanctions. A district court may impose a substantial sanction provided that it specify the reasons for imposing the sanction and the manner in which the sanction was computed. See Brown, 830 F.2d at 1438-39. The district court conscientiously did this. The district court based the amount of sanctions on the costs of defending the action. This is appropriate since compensation is one goal of Rule 11. See In re TCI, Ltd., 769 F.2d 441, 446 (7th Cir.1985). The court required the defendants to submit an itemized record of the time spent on the case and a description of the services rendered. The court examined the hourly billing rates and time spent and determined that they were reasonable. Defendants tried to limit the litigation by informally encouraging Behr to dismiss the frivolous claims. Defendants sought summary judgment on those that Behr would not dismiss. Defendants clearly satisfied their duty to mitigate damages. See Brown, 830 F.2d at 1438. The court was careful to deduct costs that had already been awarded. The court rejected some expenses which were not documented. Finally, the court awarded only one-half the amount that it had determined was reasonable on the equitable grounds that Behr's and the attorneys' assets were limited. The district court made a careful determination and one that we anticipate will serve both to compensate the defendants in part and to deter Behr and other plaintiffs from pursuing actions which they know from the start are not well-grounded in fact or law.
 
 
 25
 The district court did not abuse its discretion in awarding sanctions under Rule 11. The judgment of the district court is
 
 
 26
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court int his case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record
 
 
 [1]
 As part of a sixteen-page allegorical essay, "Life on the Douglas County Plantation or The Boll Weevils Were Yankees," in which Behr takes NBC and the banking industry to task, Behr defines his work as a "forensic economist." Behr states that he works primarily with attorneys for whom he quantifies damages for plaintiffs and defends these analysis in court. Behr apparently distributed this essay to 17,403 residential addresses in Douglas County, Wisconsin