In re William M. KUNSTLER. In re Barry NAKELL. In re Lewis PITTS, Appellants,

ROBESON DEFENSE COMMITTEE; Carnell Locklear; Mary Sanderson; Thelma Clark; Eleanor Jacobs; Betty McKellar; Eddie Hatcher; Timothy Bryan Jacobs, Plaintiffs,

v.

Joe Freeman BRITT; Richard Townsend; Lee Sampson; Hubert Stone; Lacy Thornburg; Robert Morgan; James Bowman; SBI Doe, I; SBI Doe, II; SBI Doe, III; Deputy Sheriff Doe, I; Deputy Sheriff Doe, II; Deputy Sheriff Doe, III; Deputy Sheriff Doe, IV; Deputy Sheriff Doe, V; Da Doe, I; Da Doe, II; Da Doe, III; Robeson County; Defendants–Appellees,

The North Carolina Association of Black Lawyers; North Carolina Civil Liberties Union; North Carolina Academy of Trial Lawyers; National Lawyers' Guild, North Carolina Chapter, Amici Curiae.

No. 89–2815.

United States Court of Appeals, Fourth Circuit.

Argued June 5, 1990.

Decided Sept. 18, 1990.

As Amended Oct. 12, 1990.

---

508

Morton Stavis, Center for Constitutional Rights, New York City (George Cochran, Law Center, University, Miss., Jerold Solovy, Laura Kaster, Jenner & Block, Chicago, Ill., on brief), for appellants.

David Roy Blackwell, Sp. Deputy Atty. Gen., North Carolina Dept. of Justice, Raleigh, N.C. (Lacy H. Thornburg, Atty. Gen., James J. Coman, Sr. Deputy Atty. Gen., Joan H. Byers, Sp. Deputy Atty. Gen., North Carolina Dept. of Justice, Raleigh, N.C., Steven C. Lawrence, Anderson, Broadfoot, Johnson & Pittman, Fayetteville, N.C., on brief), for appellees.

Jonathan D. Sasser, Moore & Van Allen, Durham, N.C., Martha A. Geer, Smith, Patterson, Follin, Curtis, James, Harkavy & Lawrence, Raleigh, N.C., for amici curiae North Carolina Civ. Liberties Union, The North Carolina Academy of Trial Lawyers, and The North Carolina Ass'n of Black Lawyers.

J. Phillip Griffin, Jr., Sherri Zann Rosenthal, Katherine A. Hermes, Law Student, Durham, N.C., for amicus curiae North Carolina Chapter of the Nat. Lawyers Guild.

Daniel J. Popeo, Richard A. Samp, Washington Legal Foundation, Washington, D.C., for amici curiae The Washington Legal Foundation, U.S. Senator Jesse Helms, U.S. Representatives Howard Coble and J. Alex McMillan, and The Allied Educational Foundation.

Before CHAPMAN, WILKINSON and WILKINS, Circuit Judges.

CHAPMAN, Circuit Judge:

Three attorneys appeal the award of Rule 11 sanctions against them in the amount of $122,834.28. Appellants were sanctioned following the dismissal of a 42 U.S.C. § 1983 action, in which they represented certain plaintiffs seeking monetary damages and injunctive relief from the Governor of North Carolina, a number of North Carolina district attorneys, a sheriff, certain State Bureau of Investigation officers, the State Attorney General and others for an allegedly improper state criminal prosecution and harassment. We affirm in part, vacate in part, and remand with instructions.

I

The appellant attorneys are Barry Nakell, a professor at the University of North Carolina School of Law; Lewis Pitts, Director of the Christic Institute South, a public interest law firm in Carrboro, North Carolina; and William Kunstler, a nationally known civil rights attorney. The § 1983 action was connected with the appellants' earlier representation of two American Indians, Eddie Hatcher and Timothy Jacobs, in a federal criminal case.

On February 1, 1988, Hatcher and Jacobs staged an armed takeover of *The Robesonian*, a local newspaper in Robeson County, North Carolina. Hatcher and Jacobs held twenty hostages and charged the State District Attorney and the Sheriff's Office with corruption and criminal misconduct. Hatcher and Jacobs surrendered to federal

authorities in exchange for a promise that a Governor's Task Force would investigate their complaints. The Task Force ultimately announced that it had found no evidence to support Hatcher's and Jacobs' charges.

Hatcher and Jacobs were acquitted of federal criminal charges on October 14, 1988, but North Carolina District Attorney Joe Freeman Britt announced that Hatcher and Jacobs might face state indictments. Soon after that announcement, Hatcher began a petition drive seeking to have Hubert and Kevin Stone removed from the Sheriff's Office. The Robeson Defense Committee, which had supported Hatcher in his federal trial, supported the petition drive. In November 1988, newspaper reports indicated that the State Bureau of Investigation (SBI) was investigating whether there had been a conspiracy in the takeover of *The Robesonian.*

Appellants Barry Nakell and Lewis Pitts contacted the Attorney General's office to express their concern that SBI agents would intimidate citizens who were working with Hatcher in the petition drive. The Attorney General responded that no action would be taken by his office because he did not believe that the SBI was engaged in any abuse of process. Attorney Nakell alleges that the Deputy Attorney General orally admitted that the decision was political.

Attorney Pitts volunteered legal assistance to anyone on the Robeson Defense Committee subjected to harassment because of their participation in the petition drive. Appellants allege that six members of the Defense Committee contacted Attorneys Pitts and Nakell with claims of harassment by SBI agents and the Sheriff's Department, primarily involving surveillance and questioning.

On December 6, 1988, Hatcher and Jacobs were indicted on state charges. After the indictment, Jacobs fought extradition from New York. Hatcher was in federal custody in California.

By late December 1988, appellants contend that they believed that Jacobs' extradition, the pending state prosecutions, and an alleged pattern of activity by the District Attorney and his staff, members of the Sheriff's Department, and the SBI raised constitutional concerns which could only be resolved by a civil suit, because public officials were unresponsive. Appellants contend that they also believed that there was an illegal campaign to split Jacobs from Hatcher, and to interfere with Jacobs' right to counsel by persuading him to hire local counsel.

Attorneys Pitts and Nakell contend that they initially refrained from filing the complaint in hopes of enhancing Jacobs' plea bargaining opportunities, but Mr. Nakell filed the complaint on January 31, 1989, the eve of the one-year anniversary of the armed takeover of *The Robesonian,* and he called a press conference to announce the filing. An amended complaint, signed by all three appellants, was filed on March 16, 1989.

The suit named eight plaintiffs, including various members of the Robeson Defense Committee, and Jacobs and Hatcher. The thirty-page amended complaint names nineteen defendants, including two district attorneys and members of their staffs, five SBI agents, the SBI Director, the Sheriff of Robeson County and five Deputy Sheriffs, the Attorney General of North Carolina, and the Governor of North Carolina. The complaint alleges First Amendment and Sixth Amendment violations concerning an alleged campaign of intimidation of political activity, and efforts to induce Jacobs to testify against Hatcher. All defendants were sued in their official and individual capacities, except the Governor, who was named only in his official capacity in a count seeking an injunction against extradition. The complaint also sought injunctions against the pending state criminal prosecutions, and against the defendants' harassment and interference with the attorney-client relationship established by Jacobs. The complaint sought damages against all individually named defendants and Robeson County.

After the case was filed, appellants sought expedited discovery to depose defendant SBI agent Bowman, who was the case agent in the state's pending criminal

action against Jacobs and Hatcher. The defendants moved for a protective order claiming that discovery was improperly sought to obtain information concerning the state criminal proceedings, which plaintiffs could not otherwise obtain. The district court did not rule on this motion prior to the dismissal of the case. In late March 1989, Jacobs, having failed in resisting extradition, was returned to North Carolina. In April, Jacobs agreed to a plea bargain. Appellants contend that a variety of events then caused them to reevaluate the viability of their civil suit, and to conclude that dismissal was appropriate.

On April 20, Mr. Nakell called Joan Byers, a Special Deputy Attorney General, seeking defendants' approval to a stipulated dismissal under Rule 41(a)(1)(ii). Byers would not stipulate to a dismissal under Rule 41(a)(1), but authorized appellants to state that defendants did not object to a dismissal under Rule 41(a)(2). Appellants proceeded under Rule 41(a)(2), and the order dismissing the case was entered on May 2, 1989.

On June 13, 1989, the state defendants filed their Rule 11 motion, and the county defendants filed a similar motion for sanctions on July 5. On August 8, appellants responded to the Rule 11 motions and requested an evidentiary hearing. On September 5, appellants filed a Rule 11 motion seeking sanctions against the appellees. On September 8, the court heard arguments of counsel and shortly thereafter requested submissions by defendants' counsel of their fees and expenses. On September 29, the district court imposed Rule 11 sanctions upon appellants, and dismissed appellants' Rule 11 motion. Sanctions against appellants included full fees and costs of $92,834.28 and $10,000 additional sanctions against each appellant based upon the baseless claims which appellants had taken care to publicize. We affirm the district court's findings that appellants violated all three prongs of Rule 11, but vacate and remand for reconsideration of the appropriate sanction.

## II

### SANCTIONS AFTER DISMISSAL

■ Initially, we must determine whether the defendants' failure to notify the plaintiffs or the court prior to dismissal that defendants intended to file a Rule 11 motion should have precluded consideration of the Rule 11 motion. Appellants cite *Barr Labs., Inc. v. Abbott Labs.*, 867 F.2d 743 (2d Cir.1989), where the Second Circuit affirmed the denial of a Rule 11 motion filed after a stipulated dismissal under Rule 41(a)(1)(ii). There, the defendant's attorney did not indicate an intention to seek Rule 11 sanctions prior to dismissal and implied in a letter to plaintiff's counsel, prior to the dismissal, that sanctions would not be sought if the case were voluntarily dismissed. The *Barr* court enunciated a rule "prohibit[ing] a motion for Rule 11 sanctions after the execution of a stipulation of dismissal without a reservation of the right to move for such relief." 867 F.2d at 748.

The present case is different from *Barr* because it does not involve a stipulated dismissal, which requires opposing counsel to sign the dismissal order. We have a dismissal under Rule 41(a)(2), which does not require a stipulation by the defendants. No court has adopted a rule prohibiting a motion for Rule 11 sanctions after a dismissal with prejudice under Rule 41(a)(2). In addition, unlike *Barr*, there is no evidence that defendants indicated that they would not pursue Rule 11 sanctions. We decline to extend *Barr* to dismissals under Rule 41(a)(2).

Appellants also argue that since Rule 41(a)(2) specifies that dismissal is subject to such "terms and conditions as the court deems proper," the potential for Rule 11 sanctions should be stated by a defendant as a condition to a dismissal. We disagree. Rule 41(a)(2) does not require the defendant or a court to indicate the possibility of Rule 11 sanctions as a "term or condition" of a plaintiff's dismissal. Recently, in *Cooter & Gell v. Hartmarx Corp.*, — U.S. ——, 110 S.Ct. 2447, 2456, 110 L.Ed.2d 359 (1990), the Supreme Court hypothesized that even a Rule 11 sanction which prohib-

ited refiling a complaint dismissed without prejudice under Rule 41(a)(1) would not be a "term or condition" placed upon the dismissal. Waiver of a Rule 11 motion may not be a condition to dismissal because a decision not to dismiss may not prevent the imposition of sanctions for an improvidently filed complaint. "As the 'violation of Rule 11 is complete when the paper is filed,' a voluntary dismissal does not expunge the Rule 11 violation." *Id.* 110 S.Ct. at 2455 (*quoting Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1077 (7th Cir.1987), *cert dismissed*, 485 U.S. 901, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988)).

■ There may be circumstances under which Rule 11 sanctions should not be granted after the voluntary dismissal of a case, *i.e.*, a defendant has indicated an intent not to pursue sanctions, or the motion is filed an inordinately long time after the dismissal. "Although Rule 11 does not establish a deadline for the imposition of sanctions, the Advisory Committee did not contemplate there would be a lengthy delay prior to their imposition." *Hartmarx Corp.*, 110 S.Ct. at 2457. However, these considerations are equitable, and must be resolved on a case by case analysis. The party seeking sanctions may avoid such problems by notifying his opponent and the court of his intention to pursue sanctions at the earliest possible date.

As the Supreme Court has recently confirmed, there is no jurisdictional bar to the imposition of sanctions after a voluntary dismissal.

> In order to comply with Rule 11's requirement that a court "shall" impose sanctions "[i]f a pleading, motion, or other paper is signed in violation of this rule," a court must have the authority to consider whether there has been a violation of the signing requirement regardless of the dismissal of the underlying action.

*Hartmarx Corp.*, 110 S.Ct. at 2455. "[T]he only time limitation ... [in filing Rule 11] arises out of ... equitable considerations." *Hicks v. Southern Maryland Health Systems Agency*, 805 F.2d 1165, 1167 (4th Cir. 1986). The defendants filed their motion six weeks after the Rule 41(a)(2) dismissal, the appellants were not prejudiced by appellees' delay in filing, and the district court's consideration of the motion was proper.

## III

### VIOLATIONS OF RULE 11

Rule 11 states, in relevant part:

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a repre-. sented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

The district court found that the three appellants violated all three prongs of Rule 11 by failing to make a reasonable inquiry to determine that the complaint stood well grounded in fact and warranted by existing law, and by filing the complaint for an improper purpose. We review all aspects of the district court's Rule 11 determinations under an abuse-of-discretion standard. *Cooter & Gell v. Hartmarx Corp.*, 110 S.Ct. at 2460; *Stevens v. Lawyers Mut. Liab. Ins. Co. of North Carolina*, 789 F.2d 1056, 1060 (4th Cir.1986).

### A. *Mr. Kunstler's Liability*

■ Before reviewing the specific violations of Rule 11 found by the district court, we note that Mr. Kunstler's affidavit states

**514**

that he "did not actively participate in the instant litigation, relying on Prof. Barry Nakell, who was on the scene, *to prepare and file it.*" (Emphasis added.) The district court stated that "[i]n light of the serious allegations in the complaint, Mr. Kunstler's total reliance on other counsel is itself a violation of Rule 11." This finding is supported by a recent pronouncement of the Supreme Court. Mr. Kunstler's reliance on others was indeed an improper delegation of his responsibility under Rule 11 to certify that the pleading filed over his name was well grounded in fact and in law.

> The signing attorney cannot leave it to some trusted subordinate, or to one of his partners, to satisfy himself that the filed paper is factually and legally responsible; by signing he represents not merely the fact that it is so, but also the fact that he personally has applied his own judgment.

*Pavelic & LeFlore v. Marvel Entertainment Group,* —— U.S. ——, 110 S.Ct. 456, 459, 107 L.Ed.2d 438 (1989). "[T]he purpose of Rule 11 as a whole is to bring home to the individual signer his personal, non-delegable responsibility." *Id.* 110 S.Ct. at 460. Having failed in his responsibility, Mr. Kunstler may not now be heard to protest that he does not share in any violations of Rule 11 which are evident on the face of the complaint.

### B. *Well Grounded in Fact*

■ The district court based sanctions in part on a violation of the first prong of Rule 11—finding that the complaint was not well grounded in fact. An objective test is used "to determine the reasonableness of a lawyer's prefiling investigation." *Stevens, supra,* 789 F.2d at 1060. "Blind reliance on the client is seldom a sufficient inquiry." *Southern Leasing Partners, Ltd. v. McMullan,* 801 F.2d 783, 788 (5th Cir.1986). Mr. Nakell and Mr. Pitts have argued that they had "an intimate knowledge of the county and its people; factors which made them ... professionally capable of assimilating and weighing the facts gathered prior to filing the civil suit." In light of that knowledge, the factual inaccuracies in the complaint are even more egregious.

The district court noted numerous misstatements of fact, such as the assertion that the district attorney "serves as the criminal prosecution arm of Defendant Robeson County and as such makes policy in police investigation and criminal prosecution matters for Defendant Robeson County." In fact, N.C.G.S. §§ 7A–61 *et seq.* indicates that the District Attorney is an officer of the state, not an agent nor an employee of the county. Contrary to the complaint, defendants Britt, Townsend, and Sampson, and the District Attorney's staff, are state officers, not agents or employees of Robeson County.[1] The complaint alleges that District Attorney Britt refused and failed to discipline, train and supervise the Sheriff's deputies "under their control and supervision." District Attorneys possess no such power or responsibility.

Appellants acknowledge some errors, but contend they are "isolated" and thus do not warrant sanctions. We do not agree with this characterization. The errors pervade the complaint and concern information which either was or should have been known to appellants. The errors provide a false foundation for appellants' allegation of a county-wide "conspiracy," and are central to the complaint. Appellants also suggest that, under *Pembaur v. Cincinnati,* 475 U.S. 469, 484–85, 106 S.Ct. 1292, 1300–01, 89 L.Ed.2d 452 (1986), state officials can sometimes establish county policy for purposes of § 1983 liability. Unlike *Pembaur,* there is no provision of North Carolina law which suggests that the state officials in this case either could or did act to establish county policy.

■ Other causes of action were founded on allegations which utterly lacked any basis in fact. For example, the complaint alleged that the Governor, the Attorney

---

1. Although the district court noted that appellant Pitts appeared to make similar misstatements in *Waller v. Butkovich,* 584 F.Supp. 909, 935 n. 5 (M.D.N.C.1984), it does not appear that counsel was sanctioned in that case, and we do not consider Pitts' conduct in *Waller* in affirming the award of sanctions in this case.

General and District Attorney entered into a "no state prosecution" agreement, and this agreement was breached when the state prosecution commenced. The district court found that prior to filing their complaint, appellants

> had access to the transcript of the negotiations leading to the hostage release agreement as well as a copy of the written agreement. Nothing in the agreement ... or in any of the negotiations, suggests an agreement that Hatcher and Jacobs would not face North Carolina charges, and none of the negotiators had the authority to so agree.

Moreover, North Carolina law does not grant the Governor or the State Attorney General the power to bind the state not to prosecute. Neither the Attorney General nor District Attorney Britt played any role in the hostage negotiations, but appellants now argue that unspecified evidence, obtainable through discovery, "could show" that a no prosecution agreement was made. While a lawyer may rely on discovery to reveal *additional* facts to support claims which are well grounded in fact, Rule 11 sanctions are appropriate when a lawyer attempts to use discovery to support outrageous and frivolous claims for which there is *no* factual support. Unsubstantiated claims such as these constitute an abuse of the judicial process for which Rule 11 sanctions were designed.

■ Appellants appear to have relied entirely upon discovery in the hope of finding some factual support for many of their claims. In their Memorandum and Opposition to Defendants' Motion for a Protective Order, appellants wrote:

> Plaintiffs anticipate that as a result of [deposing SBI defendant Bowman] they will be in a position to apply to the Court for temporary injunctive relief and make the showing required by Rule 65(b) of the Federal Rules of Civil Procedure.

Appellants requested a temporary restraining order in their complaint. Rule 65(b) makes clear that a temporary restraining order may be granted only if

> it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition.

Rule 65(b) does not authorize counsel to request relief and then search through discovery for facts to support the relief already requested. The rule requires that "specific facts" be *"shown"* to the court *with* the request for relief. We agree with the district court that the appellants' request for relief and their indication that they were not "in a position to make the showing required by Rule 65(b)" without later discovery indicates an unacceptable level of pre-filing investigation.

■ We affirm the district court's findings that many of the allegations against state and local officials "have nothing to do with this case ... and are factually unsubstantiated." Allegations which suggest that the Sheriff is engaged in drug trafficking and that a black inmate died while in the Sheriff's custody are irrelevant. These allegations involve no injury to the plaintiffs, and the report of drug trafficking by the Sheriff's Office is wholly unsupported in fact. Appellants protest that these allegations were represented in the complaint only as beliefs of their clients, but this does not make them relevant to the complaint or less scandalous in nature. While irrelevant allegations, standing alone, may not be cause for Rule 11 sanctions, the existence of numerous irrelevant, unsubstantiated, and sensational allegations is an appropriate factor for a district court to consider in determining whether the pleading as a whole lacks adequate factual foundation.

In this case, the complaint was filled with irrelevant allegations not tied to specific injuries to plaintiffs, *i.e.*, general allegations of abusive behavior against blacks and Indians, and allegations that Robeson County is beleaguered by poverty, illiteracy, and violence. There was little basis for the allegation that Britt, Townsend, Thornburg and Morgan conspired to appoint Townsend as District Attorney and to use SBI agents as political police to discredit the Republican candidate, and that allega-

tion was again irrelevant. Hatcher and Jacobs had been indicted prior to Townsend's appointment, and none of the other candidates for District Attorney suggested that they would not continue the prosecution. Appellants' arguments as to the relevance of such allegations are tangential at best and often strain credulity.

Although Mr. Nakell and Mr. Pitts filed lengthy affidavits detailing their factual inquiry, such affidavits do not provide factual or legal support for the inaccuracies noted by the district court. The number of hours allegedly spent by counsel in prefiling investigation does not dissuade us from affirming the district court's findings of Rule 11 violations. Given the adequate time to prepare and hours allegedly spent in preparation of the complaint, appellants have presented no excuse for the many clear factual errors in this pleading.

■ Appellants have argued that, despite the lack of pre-filing foundation for their claims, it was appropriate to include the claims because support for them could only be obtained through discovery. In *Kraemer v. Grant County*, 892 F.2d 686 (7th Cir.1990), the court held that sanctions were not warranted where an attorney relied on client information to support a cause of action based on a theory of conspiracy, even though additional facts were needed to prove the claim. "If discovery is necessary to establish a claim, then it is not unreasonable to file a complaint so as to obtain the right to conduct that discovery." 892 F.2d at 690. Despite this sweeping statement, there were in *Kraemer* a number of factors cautioning against sanctions which are not present here. In *Kraemer*, the attorney was a recent law school graduate, and had hired a private investigator to look into his client's allegations. The investigator's report did not discredit any part of the client's story and the prospective defendants refused to cooperate with the investigator. Only a single portion of the complaint—that dealing with the proof of state action—was ultimately found to be without support.

In the present case, appellants are experienced attorneys with both the time and the means to conduct a responsible factual investigation. The complaint contains myriad inaccuracies rather than a single error. Many of the factual inaccuracies could have been discovered by the most cursory investigation. The irrelevances are inexcusable considering the attorneys' experience. Indeed, it is remarkable that so many errors could have been undetected by appellants. The number of claims without factual foundation warrants sanctions, whether the errors stem from incompetency or wilful misconduct.

The need for discovery to complete the factual basis for alleged claims is not an excuse to allege claims with no factual basis. While we do not disagree with the result obtained in *Kraemer*, we find that it is not applicable to the present case. A lawyer is an officer of the court, and he should never file a lawsuit without confidence that it has a reasonable basis in fact and is well grounded in law. For the purposes of Rule 11, the factual inquiry necessary to file a complaint is generally satisfied if all of the information which can be obtained prior to suit supports the allegations made, even though *further* facts must be obtained through discovery to finally prove the claim. However, a complaint containing allegations unsupported by *any* information obtained prior to filing, or allegations based on information which minimal factual inquiry would disprove, will subject the author to sanctions.

## C. *Well Grounded In Law*

■ The district court found that the complaint was not well grounded in law. We agree. Appellants contend that the strength of the legal basis of the complaint is demonstrated by their opponent's lengthy response to them, and the approval of a civil rights attorney, who reviewed and approved of, but did not sign, the complaint. The length of an opponent's response to a complaint does not validate the otherwise insubstantial claims therein, because a lengthy response may reveal less the merit of particular claims than the number of valid defenses to them. An opponent may have employed "scorched

earth" tactics in composing a response far beyond what is required to oppose frivolous claims. Nor is the Rule 11 standard of whether a "reasonable attorney in like circumstances would believe his actions to be factually and legally justified" satisfied merely by having another attorney review a complaint. The reviewing attorney may be unfamiliar with the true facts of the case, the factual and legal investigation conducted, or the law relevant to the complaint.

 The district court enumerated several substantial claims without legal foundation. The court found no factual or legal basis for the double jeopardy claim to the state prosecution of Hatcher and Jacobs following the federal prosecution, because a subsequent prosecution by a different sovereign plainly does not constitute double jeopardy. *See Heath v. Alabama,* 474 U.S. 82, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985). Although a "tool of the same authorities" exception is possible in some circumstances, *see Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959), that exception may only be established by proof that State officials had little or no independent volition in their proceedings. *See United States v. Liddy,* 542 F.2d 76, 79 (D.C.Cir.1976). In this case, however, the complaint alleged that the state officials instituted and controlled the state proceeding, which precludes the establishment of that exception. The district court also considered a quotation attributed to Mr. Pitts in a newspaper article that the state charges did not constitute double jeopardy. Although we caution the court against relying too heavily on press reports, we do not fault the district court for considering the statement.[2]

 The district court found without legal foundation the plaintiffs' claim that Hatcher's Fifth Amendment rights were damaged when the state tried to extract testimony from Jacobs. Fifth Amendment protection is personal to the individual whose testimony is being compelled and appellants as experienced attorneys should have been well aware of this. *Moran v. Burbine,* 475 U.S. 412, 433, 106 S.Ct. 1135, 1147, 89 L.Ed.2d 410 (1986). Appellants make no attempt to explain away this glaring blunder.

Appellants sought to enjoin state criminal proceedings, but the district court found that the *Younger v. Harris* abstention doctrine clearly barred such relief. *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The court also found that Hatcher and Jacobs could have presented their federal constitutional claims to the state court. We agree that plaintiffs had no factual basis for claiming that the state prosecution was brought in bad faith, or without a reasonable expectation of conviction, because Hatcher and Jacobs had never denied taking hostages. Although appellants cite an Eighth Circuit case which suggests that the *Younger* abstention doctrine does not apply if "a prosecution was brought in retaliation for or to discourage the exercise of constitutional rights ... 'regardless of whether valid convictions conceivably could be obtained,'" *Lewellen v. Raff,* 843 F.2d 1103, 1109–10 (8th Cir.1988), *cert. denied,* 489 U.S. 1033, 109 S.Ct. 1171, 103 L.Ed.2d 229 (1989), that proposition has been rejected by this court. In *Suggs v. Brannon,* 804 F.2d 274 (4th Cir.1986), we upheld the use of the *Younger* abstention doctrine when plaintiffs claimed that their prosecution under obscenity laws chilled their First Amendment rights.

The district court also noted "serious standing problems with many of the plaintiffs' claims." For example, on the claim that the prosecution chilled Hatcher and Jacobs' First Amendment expression, the complaint presented no facts showing specific harm or threat of harm, as required by *Laird v. Tatum,* 408 U.S. 1, 92 S.Ct.

---

**2.** Pitts has never denied making the statement. If an attorney states that a particular claim is groundless, then that statement is strong evidence for the imposition of Rule 11 sanctions. However, a statement reported in the press should never be the basis for sanctions; rather, to be a basis for sanctions, the statement should appear either in an affidavit, in other reliable testimony, or in a statement by counsel in court. In this case, the reported statement was that the state charges did not "technically" constitute double jeopardy.

**518**

2318, 33 L.Ed.2d 154 (1972). Appellants respond that they did show concrete and specific harm insofar as plaintiffs' participation in the petition drive was curtailed. However, Hatcher and Jacob's participation was not curtailed, and the district court's observation on their standing problem with respect to that claim is valid.

We therefore affirm the court's findings that the complaint on the whole was not well grounded in law.

### D. *Improper Purpose*

Sanctions could have been imposed for the violations already discussed, but the district court also based the award of sanctions on appellants' improper purpose in filing the complaint. The type and number of Rule 11 violations are considered in determining the appropriate sanction, and it was proper for the district court to consider appellants' purpose. Although the district court first discussed "improper purpose" under Rule 11, whether or not a pleading has a foundation in fact or is well grounded in law will often influence the determination of the signer's purpose, and we suggest that a district court should consider the first two prongs of Rule 11 before making a determination of improper purpose.

Appellants argue that the district court's conclusions as to their purpose are clearly erroneous, because there is no evidence in the record to support the court's findings, or the findings are based on factual conclusions which were contested by affidavit. The district court concluded that sanctions would be appropriate based on the improper purpose of the lawsuit "[e]ven if the complaint had a proper legal and factual basis." Since we have affirmed the court's findings that the complaint in the instant case was not well grounded in law or in fact, we need not decide whether a complaint which is well grounded in law and in fact can be sanctioned solely on the basis that it was filed for an improper purpose. Rather, we look only to whether the court abused its discretion in finding that the complaint was filed for an improper purpose. *But see Cohen v. Virginia Elec.*

*and Power Co.,* 788 F.2d 247 (4th Cir.1986) (A finding of improper purpose was appropriate where plaintiff had a preconceived plan to withdraw a motion, which was otherwise legally and factually supportable, if the opposing party resisted).

Rule 11 defines the term "improper purpose" to include factors "such as to harass or to cause unnecessary delay or needless increase in the costs of litigation." The factors mentioned in the rule are not exclusive. If a complaint is not filed to vindicate rights in court, its purpose must be improper. However, if a complaint is filed to vindicate rights in court, and also for some other purpose, a court should not sanction counsel for an intention that the court does not approve, so long as the added purpose is not undertaken in bad faith and is not so excessive as to eliminate a proper purpose. Thus, the purpose to vindicate rights in court must be central and sincere. Filing of excessive motions may sometimes constitute "harassment" under the rule even if the motions are well grounded. *See Aetna Life Ins. Co. v. Alla Medical Serv., Inc.,* 855 F.2d 1470, 1476 (9th Cir.1988). Likewise, filing a motion or pleading without a sincere intent to pursue it will garner sanctions. *See Cohen, supra.*

We have previously stated that in order to determine "improper purpose," a district court must judge the conduct of counsel under an objective standard of reasonableness rather than assessing subjective intent. *Stevens v. Lawyers Mut. Liab. Ins. Co. of North Carolina,* 789 F.2d 1056, 1060 (4th Cir.1986); *Fahrenz v. Meadow Farm Partnership,* 850 F.2d 207, 210 (4th Cir.1988). This test was derived from *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 832 (9th Cir.1986), where it was stated that "[h]arassment under Rule 11 focuses upon the improper purpose of the signer, objectively tested, rather than the consequences of the signer's act, subjectively viewed by the signer's opponent." In other words, it is not enough that the injured party subjectively believes that a lawsuit was brought to harass, or to focus negative publicity on the injured party; instead, such improper

purposes must be derived from the motive of the signer in pursuing the suit. An opponent in a lawsuit, particularly a defendant, will nearly always subjectively feel that the lawsuit was brought for less than proper purposes; plaintiffs and defendants are not often on congenial terms at the time a suit is brought. However, a court must ignore evidence of the injured party's subjective beliefs and look for more objective evidence of the signer's purpose.

██ There is some paradox involved in this analysis, because it is appropriate to consider the *signer*'s subjective beliefs to determine the signer's purpose in filing suit, if such beliefs are revealed through an admission that the signer knew that the motion or pleading was baseless but filed it nonetheless. This evidence may be said to be "objective" in the sense that it can be viewed by a court without fear of misinterpretation; it does not involve difficult determinations of credibility. Circumstantial facts surrounding the filing may also be considered as evidence of the signer's purpose. Repeated filings, the outrageous nature of the claims made, or a signer's experience in a particular area of law, under which baseless claims have been made, are all appropriate indicators of an improper purpose.

██ The district court concluded that plaintiffs' counsel never intended to litigate this § 1983 action and that counsel filed it for publicity, to embarrass state and county officials, to use as leverage in criminal proceedings, to obtain discovery for use in criminal proceedings, and to intimidate those involved in the prosecution of Hatcher and Jacobs.

The court drew its conclusions without the aid of an evidentiary hearing, but relied upon the evidence before it. The court's first conclusion, that counsel never intended to litigate the action, is the one which most clearly supports sanctions based on a finding of improper purpose. The fact that so many allegations in the complaint lacked a basis in law or in fact strongly supports the court's finding of improper purpose. The existence of baseless allegations does not alone require a finding of improper

purpose, because inexperience or incompetence may have caused their inclusion in a pleading, rather than or in addition to willfulness or deliberate choice. *See Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir. 1987). However, in this case counsel are clearly not inexperienced, and the number and magnitude of claims without foundation suggests that incompetence is not the cause for such allegations in the complaint. This court is left with the conclusion, drawn by the district court, that counsel wilfully included the baseless claims. If counsel wilfully files a baseless complaint, a court may properly infer that it was filed either for purposes of harassment, or some purpose other than to vindicate rights through the judicial process. We therefore affirm the district court's finding that appellants violated the improper purpose prong of Rule 11.

In addition to relying upon the complaint itself, the district court inferred an improper purpose from the timing of the filing of the complaint, on the eve of the anniversary of the takeover of *The Robesonian*, and some time after the alleged constitutional violations began. The court also viewed with suspicion the timing and nature of the dismissal of the complaint, which occurred after Jacobs lost his extradition fight in the criminal case, and before any significant discovery might have given notice to the plaintiffs that their claims were not valid. The district court dismissed as incredible appellants' explanations for dismissal, which contended that many of the claims had become moot through a series of events. The district court found it "absurd" to think that the wide-spread conspiracy involving high-level state and public officials had suddenly become unimportant by May 2, 1989. The court noted that the basis of the complaint—the breach of the alleged no-prosecution agreement—still existed even after Hatcher's and Jacobs' guilty pleas to the state charges. The court stated that the double jeopardy claims, damage claims, and other requests for equitable relief, if ever valid, did not cease being valid. In finding improper purpose, the district court was also influenced

by the outrageous nature of the claims made.

The affidavits submitted by counsel strongly disputed the court's conclusions as to the timing of the filing and of the dismissal of the suit, and claimed that no improper motive influenced the timing of events. As to the decision to dismiss, appellants argued that it was based solely on financial considerations and the necessity of devoting professional resources elsewhere. Appellants argue that many equitable claims had become moot, and that the prospect for damages on the remaining claims did not warrant the expense of continuing the suit. However, the district court's determination that these explanations are not reasonable or believable, in light of all of the evidence surrounding the filing of the complaint and the frivolous nature of the allegations made, is not clearly erroneous.

The district court noted other evidence which suggested that appellants' purpose in filing the complaint was not to vindicate plaintiffs' rights, such as appellants sending a copy of the complaint to the state judge who likely would have tried Hatcher and Jacobs in the criminal case. The court also noted a quotation reported by the media, in which Mr. Pitts allegedly suggested that the suit was dropped after the Attorney General's office showed strong opposition to the suit. The court further considered an affidavit by New York attorney Neal Rose concerning Mr. Pitts' alleged admission that the suit was commenced as leverage and lacked a factual basis, although that affidavit was contradicted by an affidavit by attorney Alan Rosenthal. In light of other evidence which supports the court's finding of improper purpose, we cannot say that it was an abuse of discretion for the court to consider these matters as additional support, even though determinations of credibility are best made after an evidentiary hearing.

■ In concluding that appellants had never intended to litigate their suit, the district court also concluded that circumstances surrounding the case, when viewed as a whole, supported the conclusion that appellants' primary motives in filing the complaint were to gain publicity, to embarrass state and county officials, to gain leverage in criminal proceedings, to obtain discovery for use in criminal proceedings, and to intimidate those involved in the prosecution of Hatcher and Jacobs. At least some of these motives would not warrant sanctions under the improper purpose portion of Rule 11, if appellants' central purpose in bringing suit had been to vindicate rights of the plaintiffs. Holding a press conference to announce a lawsuit, while perhaps in poor taste, is not grounds for a Rule 11 sanction, nor is a subjective hope by a plaintiff that a lawsuit will embarrass or upset a defendant, so long as there is evidence that a plaintiff's central purpose in filing a complaint was to vindicate rights through the judicial process. In this case, however, there was no proper purpose for appellants' filing of the suit, and the district court's consideration of other possible motives for the suit based on the evidence available was proper.

■ We have affirmed the district court's conclusion that sanctions were warranted based on the improper purpose prong of Rule 11 because it is not clearly erroneous and is supported by facts such as the baseless allegations made, appellants' legal experience, and the cumulative nature of the evidence. However, we urge district courts to exercise special caution when evaluating a signer's purpose under Rule 11. When there are issues of credibility, disputed questions of fact, and rational explanations of purpose given, an evidentiary hearing may well be necessary to resolve the issues. This is particularly true when large sanctions are being considered on the ground of improper purpose as well as failure to comply with the first two prongs of Rule 11. We do not find that the court erred in failing to hold an evidentiary hearing in this case, because the cumulative nature of the evidence, as well as our earlier findings on the frivolousness of the allegations made in the complaint and the lack of a legal or factual basis, convinces us that the court's finding of improper purpose is not clearly erroneous and would

not have been altered by an evidentiary hearing.

## IV

## DUE PROCESS

■■■ Appellants argue that the district court should not have found a violation of the "improper purpose" prong of Rule 11 without holding an evidentiary hearing. We disagree. Due process does not require an evidentiary hearing before sanctions are imposed, even when sanctions are imposed in part under the improper purpose prong of Rule 11. The Advisory Committee Note on Rule 11, 28 U.S.C.App., pp. 575–76, indicates that satellite litigation over sanctions and separate hearings should be limited to the extent possible. "[T]he court must to the extent possible limit the scope of the sanction proceedings to the record."

Appellants cite two Seventh Circuit cases which suggest that a hearing should be held where sanctions are based on a signer's "bad faith." *See Brown v. Nat'l Bd. of Medical Examiners*, 800 F.2d 168, 173 (7th Cir.1986); *Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 206 (7th Cir. 1985).[3] We are not persuaded by the scant reasoning of these cases that a hearing is required whenever improper purpose is found under Rule 11. Appellants also cite *INVST Financial Group, Inc. v. Chem-Nuclear Systems, Inc.*, 815 F.2d 391, 405 (6th Cir.), *cert. denied*, 484 U.S. 927, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987). Although it cites *Rodgers, Chem-Nuclear Systems* does not support appellants' proposition. Instead, the court simply notes that

no hearing is required where an attorney is sanctioned for filing frivolous motions ungrounded in law or fact, and where the judge imposing sanctions has participated in the proceedings. These are the circumstances in [this] case.

*Id.* Counsel was also sanctioned in that case for filing motions for an improper purpose.

In determining whether and to what extent a hearing is required prior to the imposition of sanctions, we are guided by the Advisory Committee Note to Rule 11 and the reasoning of *Donaldson v. Clark*, 819 F.2d 1551, 1561 (11th Cir.1987):

The Advisory Committee Note indicates some of the matters to be considered: (1) the circumstances in general; (2) the type and severity of the sanction under consideration; and (3) the judge's participation in the proceedings, the judge's knowledge of the facts, and whether there is need for further inquiry. The Advisory Committee Note observes that "[i]n many situations the judge's participation in the proceedings provides him with full knowledge of the relevant facts and little further inquiry will be necessary."

When an attorney has failed to present necessary factual support for claims despite several opportunities to do so, for example, further hearing on the sanctions issue may well be not only unnecessary but also a waste of judicial resources. On the other hand, when a court is asked to resolve an issue of credibility or to determine whether a good faith argument can be made for the legal position taken, the risk of an erroneous imposition of sanctions under limited procedures and the probable value of additional hearing are likely to be greater. Prior opportunities to respond to Rule 11 charges will also influence the extent to which further hearing is necessary.

As mentioned by the Advisory Committee, the type and severity of the sanction are necessary elements in the calculus. The more serious the possible sanction both in absolute size and in relation to

---

**3.** *Brown* cites only *Rodgers* for the proposition. *Rodgers* itself relies on *Textor v. Board of Regents of Northern Illinois University*, 711 F.2d 1387 (7th Cir.1983), a case which is based not on the current Rule 11, which relies on an objective standard of reasonableness, but on a wholly subjective test.

actual expenditures, the more process that will be due.

(Footnote omitted.)

■ Even if an evidentiary hearing is not required in every "improper purpose" case, appellants argue that such hearing was required in this case. Although the number of credibility determinations which the court made without an evidentiary hearing should have suggested to the court that an evidentiary hearing would have been of value, we affirm the court's findings that appellants violated all three prongs of Rule 11 because the findings are not clearly erroneous even excluding some evidence of "improper motive" which appellants contested.

The district judge's participation in the proceedings was adequate to give him full knowledge of the relevant facts without the necessity of an evidentiary hearing. The district court had before it the pleadings, the summary judgment motions of the state defendants and the 12(b) motion of the county defendants. We also find that counsel were given an adequate opportunity to contest the court's determinations that Rule 11 was violated. The district court allowed appellants to submit affidavits, and voluminous written legal arguments. The district judge also heard oral argument. We find that due process requirements were satisfied by the opportunities appellants were given to respond to the charges that their complaint violated Rule 11.

■ However, although we find that counsel had an adequate opportunity to contest the court's finding that Rule 11 was violated, we find that appellants were not given an adequate opportunity to respond to the type and amount of sanction imposed, particularly in light of the large monetary sanction. Appellants were given no opportunity to contest the fee statements submitted, and the amount of the sanction was largely the result of those statements. Under the facts of this case, particularly the amount of the sanction, due process requires that appellants have some opportunity to contest the amount of the sanction imposed. We therefore vacate the sanction imposed. As discussed below, we vacate the type and amount of sanction chosen by the district court for certain additional reasons. On remand, under the guidelines set forth below the appellants will be given an appropriate opportunity to respond to the type and the amount of the sanction.

## V

## AMOUNT OF SANCTION

### A. Attorney Fees Portion

■ Rule 11 requires that "an appropriate sanction" be imposed upon those who violate its requirements. Appellants argue that the amount of sanctions was inappropriate, in part because the district court used the Rule to shift fees and compensate the defendants, rather than to deter improper litigation. We agree and vacate the amount of the monetary sanction.

■ We have previously held that the least severe sanction adequate to serve the purposes of Rule 11 should be imposed. *Cabell v. Petty*, 810 F.2d 463, 466 (1987). It is clear that Rule 11 should not blindly be used to shift fees. In this instance, it appears that the district court erred in assuming that "[t]he *first* purpose of sanctions under Rule 11 is to compensate the offended parties." In establishing the amount of the sanction, the district court improperly focused on providing "compensatory sanctions." The amount of expense borne by opposing counsel in combatting frivolous claims may well be an appropriate factor for a district court to consider in determining whether a monetary sanction should issue and if so, in what amount. However, it is clear that the primary, or "first" purpose of Rule 11 is to deter future litigation abuse. A district court can and should bear in mind that other purposes of the rule include compensating the victims of the Rule 11 violation, as well as punishing present litigation abuse, streamlining court dockets and facilitating court management. *White v. General Motors Corp.*, 908 F.2d 675 (10th Cir.1990); *Hartmarx Corp.*, 110 S.Ct. at 2454–57. But the

amount of a monetary sanction should always reflect the primary purpose of deterrence.

■ When a monetary award is issued, a district court should explain the basis for the sanction so a reviewing court may have a basis to determine whether the chosen sanction is appropriate. A district court should consider the four factors recently enumerated by the Tenth Circuit in *White v. General Motors Corp.*, 908 F.2d 675: (1) the reasonableness of the opposing party's attorney's fees; (2) the minimum to deter; (3) the ability to pay; and (4) factors related to the severity of the Rule 11 violation.

> 1) Reasonableness (lodestar) calculation. Because the sanction is generally to pay the opposing party's "reasonable expenses ... including a reasonable attorney's fee," Fed.R.Civ.P. 11, incurred because of the improper behavior, determination of this amount is the usual first step. The plain language of the rule requires that the court independently analyze the reasonableness of the requested fees and expenses. The injured party has a duty to mitigate costs by not overstaffing, overresearching or overdiscovering clearly meritless claims. In evaluating the reasonableness of the fee request, the district court should consider that the very frivolousness of the claim is what justifies the sanctions.

908 F.2d at 684 (citations omitted).

■ Attorney time which is attributed to responding to the media, or to claims within a pleading which do not merit sanctions, should be excluded from consideration. Only attorney time which is in response to that which has been sanctioned should be evaluated. In this case, it is appropriate for the court to consider on remand whether the large amount of time devoted to the pursuit of sanctions was warranted, and whether the injured parties failed to mitigate their costs by delaying their pursuit of sanctions until after the dismissal. It would also be appropriate for the district court to reduce the amount of any fees awarded based on appellees' failure to give earlier notice to appellants that their conduct warranted Rule 11 sanctions. *See* Advisory Committee Note. While the analysis of the reasonableness of costs may call for fairly detailed affidavits, this requirement is not intended to require evidentiary hearings.

■ Although amici curiae for appellants argue that sanctions based in whole or in part on attorney's fees require the same procedures of discovery, briefing, and argument allowed in attorney's fees cases, we have already stated that sanctions, unlike attorney's fees, are not primarily intended to compensate the prevailing party. Because the purposes of sanctions differ from those of attorney's fees, the amount of process due the offending party differs.

■ The determination of the type or amount of the sanction imposed comes only after the offending party has had an opportunity to defend against the imposition of any sanction.[4] Presumably, a party's interest in the kind and amount of a sanction is of less import than his or her interest in the decision to impose any sanction. As stated, a district court is required to choose the least severe sanction adequate to accomplish the purpose of Rule 11. Thus, a monetary sanction should never be based solely on the amount of attorney's fees claimed by the injured party, even where a court determines that the amount of the sanction should equal the fees claimed by the injured party. As we have previously stated, "reasonable" attorney's fees in the context of Rule 11 "does not necessarily mean actual expenses and attorney's fees." *Fahrenz v. Meadow Farm Partnership*, 850 F.2d 207, 211 (4th Cir.1988). Because the amount of a monetary sanction is not based solely on any claimed amount of attorney's fees, but rather on all of the factors listed herein, the risk of an erroneous calculation based on fee statements is less troublesome in the context of a Rule 11 sanction than in attorney's fees cases. We also bear in mind the interest in avoiding additional hearings for purposes of calculating the amount of fees in the context

---

**4.** Appellants have already had this opportunity, and on the present record we are convinced that Rule 11 sanctions against the three appellants are not only proper, but they are required if the Rule is to have any meaning.

of Rule 11. *See* Advisory Committee Note. Given these considerations, we hold that a sanctioned party is not entitled to an evidentiary hearing or to all of the procedural safeguards available in the context of attorney's fees actions. Instead, a district court may permit a sanctioned party to respond to an opposing party's fee statements in its discretion. Of course, such discretion must be exercised with proper considerations of due process. Where a court determines that a large monetary sanction should issue, and the amount is heavily influenced by an injured party's fee statements, as was the case here, the court should permit the sanctioned party to examine and contest the injured party's fee statements as an aid to the court's own independent analysis of the reasonableness of the claimed fees.

> 2) Minimum to deter. As we have already stated, the primary purpose of sanctions is to deter attorney and litigant misconduct, not to compensate the opposing party for its costs in defending a frivolous suit. It is particularly inappropriate to use sanctions as a means of driving certain attorneys out of practice. Such decisions are properly made by those charged with handling attorney disbarment and are generally accompanied by specific due process provisions to protect the rights of the attorney in question.... [T]he amount of sanctions is appropriate only when it is the 'minimum that will serve to adequately deter the undesirable behavior.' ... Thus, the limit of any sanction award should be that amount reasonably necessary to deter the wrongdoer.

*White,* 908 F.2d at 684–685 (citations omitted).

A district court must constantly bear in mind the limited purposes of Rule 11, particularly in a case such as this, where a court may disagree with aspects of counsel's conduct which fall outside of the scope of Rule 11. Of course, a court must also constantly bear in mind that the rule is not to chill the bringing of facially valid lawsuits, or a lawyer's creativity in introducing novel theories of recovery.

3. Ability to pay. The offender's ability to pay must also be considered, not because it affects the egregiousness of the violation, but because the purpose of monetary sanctions is to deter attorney and litigant misconduct. Because of their deterrent purpose, Rule 11 sanctions are analogous to punitive damages. It is hornbook law that the financial condition of the offender is an appropriate consideration in the determination of punitive damages.... Inability to pay what the court would otherwise regard as an appropriate sanction should be treated as reasonably akin to an affirmative defense, with the burden upon the parties being sanctioned to come forward with evidence of their financial status.

*White,* 908 F.2d at 685 (citations omitted).

■ Although the burden is upon the parties being sanctioned to come forward with evidence of their financial status, a monetary sanction imposed without any consideration of ability to pay would constitute an abuse of discretion. A court should refrain from imposing a monetary award so great that it will bankrupt the offending parties or force them from the future practice of law. Generally, the smaller the amount of the monetary sanction imposed, the greater the likelihood that a court's consideration of the ability to pay will not want for lack of the formal submission of evidence on a sanctioned party's financial status. When the monetary sanction is large, however, the parties should generally be given the opportunity to submit affidavits on their financial status, or to submit such other evidence as the court's discretion permits. In this case, the amount of the monetary sanction originally imposed was substantial, and the parties should have been afforded the opportunity to submit evidence on the issue of whether the amount imposed was so great as to unfairly restrict their access to the courts or to otherwise curtail their ability to practice law or to cause them great financial distress.

4. Other factors. In addition, the court may consider factors such as the offending party's history, experience, and ability, the severity of the violation, the degree to which malice or bad faith contributed to the violation, the risk of chilling

the type of litigation involved, and other factors as deemed appropriate in individual circumstances. *See* [American Bar Association, Standards and Guidelines for Practice Under Rule 11 of the *Federal Rules of Civil Procedure* (1988), reprinted in 5 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, 212, 236–37 (Supp.1989) ].

 In this case, it is appropriate for the court to consider counsel's vast experience, the outrageous and scandalous nature of the claims made, and the improper purpose of the lawsuit. A court might also increase a sanction if one attorney has been previously sanctioned, because such conduct might indicate that the previous sanction was not enough to deter the repetition of the offense.

 In addition to the four factors just stated, a district court must sometimes consider whether joint and several liability is appropriate, such as where sanctions are to be imposed against both a client and his counsel. In this case, joint and several liability among attorneys, who each signed a complaint in violation of Rule 11, was not inappropriate. Under *Pavelic & LeFlore v. Marvel Entertainment Group,* each attorney has a duty to ensure that the pleading he has signed comports with Rule 11. Issues of individual culpability do not arise where each sanctioned party has committed the same Rule 11 violations.

### B. *Additional Sanctions*

 In addition to imposing sanctions in the amount of attorney's fees claimed by the defendants, the district court imposed sanctions in the amount of $10,000 upon each appellant based on his conduct in wilfully filing outrageous claims and appellants' "pains to publicize the allegations through the media." We believe this sanction was error. Rule 11 does not confine courts to any maximum monetary sanction, nor does it even require courts to restrict themselves to monetary penalties. However, Rule 11 must be accorded its plain meaning. The text of the Rule clearly pertains only to a "pleading, motion, or other paper." Rule 11 does not encompass all conduct within judicial proceedings, and it clearly does not reach conduct outside of the judicial process. *Oliveri v. Thompson,* 803 F.2d 1265, 1274 (2d Cir.1986), *cert. denied,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987). In this case, it appears the court imposed sanctions in part based on appellants' publication of their baseless claims through the media. While such publication may not be actionable as libel or slander, and is reprehensible, Rule 11 was clearly not designed to encompass such conduct.

## VI

Appellants' argument that the district court should have granted their own motion for sanctions against appellees is without merit. The denial was not an abuse of discretion.

## VII

## CONCLUSION

In sum, we affirm the findings of the district court which led to the imposition of Rule 11 sanctions in this case against plaintiffs' attorneys. However, we vacate the sanction imposed, because it was based on improper considerations and the size of the sanction required the district court to allow sanctioned counsel an opportunity to respond, at least to the fee statements on which the sanction was based. On remand, the district court should consider the factors which we have adopted prior to determining the sanction which should be imposed.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS