985 F.2d 563
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Frank PARRISH, Plaintiff,
v.
Popaltal PATEL and Savita Patel, Defendants-Appellees,
Appeal of Pamela LACEY, Counsel for Frank Parrish.
 No. 92-1197.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 1, 1992.
Decided Feb. 3, 1993.
 
 Before CUMMINGS and MANION, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.
 
 ORDER
 
 1
 This is an appeal by attorney Pamela Lacey from a sanction imposed on her under Federal Rule of Civil Procedure 11. She brought this action in federal district court on behalf of her client Frank Parrish, against Popaltal (at times spelled "Popatlal") and Savita Patel, seeking damages for breach of contract.[1] The district court granted the Patels' motion for summary judgment. The court reasoned that a prior judgment in a state court action between these parties had determined that the equities of the case were with the Patels and that Parrish had made no allegations in his complaint or motion for summary judgment which would change the balance of equities. Additionally, the court found that Parrish had not shown actual damages as a result of any breach occurring since the state court judgment.
 
 
 2
 The district court also granted the Patels' motion for sanctions. The court found that "Ms. Lacey's position was frivolous and could not have been advanced in good faith." The court entered judgment for the Patels and ordered Lacey to pay attorneys' fees and expenses of $4,287.19. Lacey appealed. Because Parrish did not appeal, we consider the merits only as they relate to sanctions. Based on the discussion below, we reverse.
 
 I.
 
 3
 Parrish, as a land trust beneficiary, was the owner of real estate, including a motel and dramshop. On August 31, 1981, Parrish executed a contract with the Patels for the sale of his real estate. The Patels agreed to pay the purchase price of $739,000 in installments over a period of years and made further promises with respect to paying taxes, maintaining insurance, keeping the premises in good repair, not leasing the premises, and the like.
 
 
 4
 On February 24, 1988, Parrish and the Patels executed an agreement "for the purpose of effectuating a transfer" of the property. They agreed that the Patels were in material default under the 1981 contract, and that the 1988 agreement reflected their intentions concerning compromise of a dispute "regarding the default." The Patels agreed to pay Parrish $6,500 forthwith and $62,500 by April 1, 1988. In addition, the Patels agreed to assume the amounts due under a 1970 and a 1984 mortgage in favor of Saline Valley FSLA. They again made an agreement with respect to performing all duties under the mortgages, payment of taxes, maintaining insurance, keeping the premises in good repair, and not selling or leasing the property. The 1988 agreement included a provision giving Parrish several remedies in the event of uncured default. At his election, Parrish could declare a forfeiture of the Patels' interest and maintain an action for possession under the Forcible Entry and Detainer Act, or reinstate the 1981 contract with all the Patels' obligations thereunder becoming immediately due and payable. Parrish agreed to deliver a deed of conveyance to the Patels on April 1, 1988. The Patels agreed at the same time to execute a deed in favor of Parrish, to be held in escrow and delivered to Parrish in the event of default by the Patels. Throughout these negotiations, Parrish was represented by attorney Lacey.
 
 
 5
 In May of 1988, Parrish declared the second contract in default and accelerated the balance due on the original contract. Lacey delivered the quitclaim deed to Parrish. On July 5, 1988, Parrish filed an action for forcible entry and detainer in Jackson County Circuit Court. Parrish v. Patel, No. 88-LM-106. Parrish alleged that the failure of the Patels to make mortgage payments in a timely manner, failure to pay real estate taxes when due, failure to maintain public liability and dramshop insurance, failure to maintain the premises in good repair, and leasing a portion of the premises were in violation of the 1988 agreement. Parrish alleged that he had given notice of default, that the default was not cured, and that he was entitled to reinstate the 1981 contract and to immediate possession. In response, the Patels filed a complaint for declaratory and injunctive relief, Patel v. Parrish, No. 88-CH-37,[2] and the two cases were consolidated for trial.
 
 
 6
 The circuit court held a trial on October 3, 1988. At the close of Parrish's case, the court granted the Patels' motion for directed verdict and dismissed Parrish's forcible entry and detainer action. At a later date, the state judge issued an order articulating three grounds for his decision. First, the court ruled that Parrish should have filed suit under the Mortgage Foreclosure Law due to the residential character of the premises. Parrish, Nos. 88-CH-37, 88-LM-106, slip op. at 8 (Ill.Cir.Ct. Dec. 2, 1988). Second, the court found that there had been a prior acceptance and waiver by Parrish of late payments, late taxes, maintenance and the leasing of a portion of the premises during the terms of both contracts. Id. And third, the court found that the equities strongly favored the Patels. In weighing the equities, the court took into account the fact that a substantial amount of the indebtedness had been paid by the Patels, with only $122,735 remaining due and owing on the two promissory notes to Saline Valley. Id. The trial court entered judgment on December 2, 1988. Parrish was ordered to convey his interest by quitclaim to the Patels and the Patels were ordered to convey their interest in the property by delivering a quitclaim deed naming Parrish as grantee, with said deed to be held in escrow by Saline Valley or Lacey--in accordance with the terms of the agreements. Parrish appealed.
 
 
 7
 On January 19, 1990, the Fifth District Court of Appeals affirmed the judgment of the circuit court in an unpublished memorandum. The appellate court decided, contrary to the circuit court, that the action had been properly brought in forcible entry and detainer. The appellate court additionally held that the circuit court did not err in finding that Parrish had waived strict compliance with the terms of the two contracts, and did not err in finding that the equities of the case were with the Patels. In April of 1990, the appellate court denied Parrish's application for a certificate of importance to the Illinois Supreme Court.
 
 
 8
 On May 31, 1990, Parrish, again represented by Pamela Lacey, filed an action in federal court. The complaint described the two agreements and alleged breaches thereof with respect to maintaining public liability and dramshop insurance, keeping the premises in good repair, and leasing a portion of the premises. The breaches allegedly occurred after October 3, 1988, the date of the state court trial, although the complaint did not mention the state court judgment. Parrish demanded an acceleration of the balance due under the first contract and prayed for a judgment in the amount of $525,180, plus interest. The theory was that the new breaches of the 1988 agreement entitled Parrish to reinstate the 1981 agreement and recover the unpaid portion of the purchase price provided in the first agreement.
 
 
 9
 While the federal action was pending, proceedings continued in state court, apparently on the basis of enforcing the December 2, 1988 judgment. On December 19, 1990, the Patels filed an order to show cause with the circuit court. The circuit court ordered Parrish to direct Chicago Title and Trust, as trustee, to sign a trustee's deed and return it to the clerk of court. The Patels paid the balance due on the two notes in January of 1991. In March of 1991, the Patels moved the circuit court to hold Parrish in contempt of court based on the filing of the federal action. The circuit court found no evidence to warrant a finding of contempt. Proceedings of the Hearing Before Honorable David Watt, Jr., at 15 (March 26, 1991).
 
 
 10
 In March 1991, the parties filed in federal court cross-motions for summary judgment and the Patels filed a motion for sanctions. The court issued an order granting the Patels' motions. Parrish, No. 90-3356 WLB (S.D.Ill. July 30, 1991) (order denying plaintiff's motion for summary judgment and granting defendants' motion for summary judgment and motion for sanctions). The court expressly declined to decide whether the Patels breached the 1988 contract after October 3, 1988, whether there was waiver, or whether Parrish provided "a definite and specific notice of his intent to require strict performance after October 3, 1988." Id. at 9 n. 2. The court applied the doctrine of collateral estoppel to the state court's determination that the balance of equities favored the Patels. Even if there was a breach of contract after October 3, 1988, the court reasoned, Parrish had alleged no new facts which would change the balance of equities in the case. Id. The court concluded that Parrish has already received the full benefit of his bargain and has suffered no damages. To allow him to proceed, the court concluded, "would be nothing more than a windfall to Parrish." Id. at 10.
 
 
 11
 On the question of sanctions, the court found that Lacey's position before the court was not well grounded in fact or warranted by existing law. The court concluded that Lacey's persistence in litigating the matter, even after the Patels had paid off the notes, could only have been designed to harass the Patels. Although the court found that Lacey's conduct warranted Rule 11 sanctions, it did not specify the particular pleading, motion or other paper found to have been signed in violation of Rule 11. At a later date, the court held an evidentiary hearing with respect to the appropriate award of attorneys' fees. The court ordered Lacey to reimburse the Patels' for their costs and attorneys' fees throughout the entire proceeding.
 
 
 12
 Parrish filed a motion for reconsideration, which was subsequently denied. Parrish, No. 90-3356 WLB (S.D.Ill. Sept. 20, 1991) (order denying motion to reconsider). On January 7, 1992, the district court entered judgment in favor of the Patels and against Parrish. The court ordered Lacey to pay sanctions in the amount of $3,982.50, plus $304.69 for expenses. Parrish, No. 90-3356 WLB (S.D.Ill. Jan. 7, 1992). Lacey filed a timely appeal.
 
 II.
 
 13
 Under Federal Rule of Civil Procedure 11, every pleading, motion, or paper of a party represented by an attorney must be signed by the attorney of record. That signature constitutes a certificate by the signer,
 
 
 14
 that the signer has read the pleading, motion, or paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
 
 
 15
 Fed.R.Civ.P. 11; see Kapco Mfg. Co. v. C & O Enterprises, Inc., 886 F.2d 1485, 1491 (7th Cir.1989) (citing Brown v. Federation of State Medical Bds., 830 F.2d 1429, 1434 (7th Cir.1987)). Where a pleading, paper or motion is signed in violation of this rule, the court "shall" impose an appropriate sanction upon the person who signed it. Fed.R.Civ.P. 11. "[A]n attorney [must] make a reasonable inquiry into the factual and legal basis for the claims asserted. The failure of an attorney to make an objectively reasonable investigation of the facts underlying a claim or the applicable law justifies the imposition of Rule 11 sanctions." In re Ronco, Inc., 838 F.2d 212, 217 (7th Cir.1988) (citation omitted). Where counsel's inquiry was objectively reasonable under all the circumstances of the case, however, Rule 11 sanctions are inappropriate. Fed. Deposit Ins. Corp. v. Tekfen Constr. & Installation Co., 847 F.2d 440, 442 (7th Cir.1988); In re Ronco, 838 F.2d at 217 (citing cases).
 
 
 16
 We review a district court's granting of Rule 11 sanctions only for an abuse of discretion. Chambers v. Nasco, Inc., --- U.S. ----, ----, 111 S.Ct. 2123, 2138 (1991); Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990); Harrison v. Dean Witter Reynolds, Inc., 974 F.2d 873, 886 (7th Cir.1992); Kotsilieris v. Chalmers, 966 F.2d 1181, 1183 (7th Cir.1992). "If the district judge makes an error of law in assessing the legal merits of the party's case, that error may, of course, by itself, constitute an abuse of discretion." In re Ronco, 838 F.2d at 217.
 
 
 17
 The parties assert that the district court granted the Patels' motion for summary judgment and motion for sanctions and denied Parrish's motion for summary judgment "all on the basis of res judicata." Although the parties provide us with a comprehensive discussion of the doctrine of res judicata, their analysis is not particularly helpful. A close reading of the court's opinion reveals that the district judge did not rest his decision on this doctrine, nor does it appear that he imposed Rule 11 sanctions on Lacey for her contention that the action was not barred by res judicata.
 
 
 18
 As we read the district court order, Judge Beatty held that Parrish was collaterally estopped from re-litigating the balance of equities as of the date of the state court trial. Judge Beatty reasoned that "Parrish received a full and fair opportunity to litigate the balance of equities in the state court proceedings. Applying the principle of collateral estoppel to bar Parrish from relitigating that issue will further the policies of judicial economy and finality of litigation." Parrish, No. 90 3356 WLB, slip op. at 9. In addition, Judge Beatty found reasoned that even if the Patels had breached the 1988 contract after October 3, 1988,Parrish had alleged no new facts in his complaint or motion for summary judgment that would change the balance of equities. Judge Beatty concluded that the equities overwhelmingly favored the Patels where Parrish had already received the full benefit of his bargain and had suffered no damages. Id. To allow Parrish to proceed, he reasoned, "would be nothing more than a windfall to Parrish." Id. at 10.
 
 
 19
 On the issue of sanctions, Judge Beatty found that Lacey's position before the court was not well grounded in fact nor warranted by existing law. Moreover, Judge Beatty found unreasonable Lacey's persistence in litigating the matter after the Patels had paid off the notes to Saline Valley. He concluded that the filing of the federal action could only have been designed to harass the Patels.
 
 
 20
 A. Lacey's position that Parrish was entitled to reinstatement of the 1981 contract.
 
 
 21
 In the federal complaint, Lacey alleged that the Patels breached the 1981 and 1988 contracts with respect to maintaining public liability and dramshop insurance, keeping the premises in good repair, and leasing a portion of the premises. Each of the breaches was alleged to have occurred after October 3, 1988--the date of the state court trial. Parrish demanded an acceleration of the balance due under the first contract and prayed for a judgment in the amount of $525,180, plus interest, attorneys' fees and costs.
 
 
 22
 The 1988 agreement was executed in response to the Patels' failure to fulfill their promises under the original 1981 contract. The 1988 contract provides that "Owner and Buyers agree that Buyers are in material default of an installment Contract to Purchase Real Estate Held in Trust dated the 31st day of August, 1981; and ... this AGREEMENT reflects the intentions of Owner and Buyers with respect to compromising the dispute regarding the default of Buyers[.]" In this agreement, the Patels agreed to pay $6,500 by February 24, 1988 and $62,500 by April 1, 1988, assume the two mortgages on the property, pay all real estate taxes as they became due, maintain public liability and dramshop insurance, keep the premises in good condition and repair, and agreed to not sell, lease or assign the property. Agreement dated February 24, 1988 pp 1-6. In the event of default, the Patels agreed that Parrish may elect one or more of a number of remedies. Relevant here, the contract provides that Parrish may "reinstate the Installment Contract to Purchase Real Estate Held in Trust dated the 31st day of August, 1981, and all obligations of Buyers thereunder shall become immediately due and payable without further notice to Buyers." Agreement dated February 24, 1988 p 7.
 
 
 23
 At summary judgment, Lacey brought forward a number of affidavits in support of her contention that the Patels had breached the contract in a number of respects after October 3, 1988.[3] The Patels did not demonstrate otherwise, arguing instead that Parrish was barred by the doctrine of res judicata. Under the express language of the 1988 agreement, therefore, Parrish could claim that he was entitled to declare the Patels in default and to reinstate the 1981 installment contract. Were the original contract reinstated, Parrish may indeed seek a judgment for the remainder of the purchase price under the 1981 contract--less any credit for the payment of the mortgages. We can understand Judge Beatty's reaction that reinstatement of the 1981 purchase price would produce a large penalty for the breach of the 1988 agreement. That result, however, is based on a strict reading of the 1988 agreement and we cannot agree that the position advanced by Lacey was frivolous.[4]
 
 
 24
 Additionally, Lacey provided factual showings in opposition to the defense that strict compliance had been waived. Lacey submitted a number of notices of default and demand for payment and/or immediate possession. R. at 27b, Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, Exs. 12-16. Judge Beatty expressly declined to decide whether there was a waiver by Parrish of breaches after October 3, 1988, or whether Parrish had provided a definite and specific notice of his intent to require strict performance after October 3, 1988. Parrish, No. 90-3356, slip op. at 9, n. 2 (S.D.Ill. July 30, 1991). Although sanctions are appropriate where the validity of an affirmative defense was so apparent that a plaintiff could not have advanced his or her position in good faith, see McLaughlin v. Bradlee, 803 F.2d 1197, 1205 (D.C.Cir.1986); Cannon v. Loyola University of Chicago, 784 F.2d 777, 782 (7th Cir.1986), cert. denied, 479 U.S. 1033 (1987), Rule 11 sanctions will not be imposed where there is an arguable basis that the defense would not bar plaintiff's claim.
 
 
 25
 Accordingly, we conclude it was an abuse of discretion to find that Lacey's position was not well-grounded in fact nor warranted by existing law.
 
 
 26
 B. Lacey's position after full payment of the notes.
 
 
 27
 Judge Beatty further admonished Lacey for her persistence in litigating this action even after the Patels had paid off the notes to Saline Valley National Bank. The Patels did not pay off the notes until January 1991--approximately eight months after Parrish had filed this action. A change in circumstances subsequent to the filing of the suit does not warrant Rule 11 sanctions for the filing of a complaint. See Schoenberger v. Oselka, 909 F.2d 1086 (7th Cir.1990) (Rule 11 does not impose continuing duty to update or correct papers that did not violate rule when signed or filed); Beverly Gravel, Inc. v. DiDomenico, 908 F.2d 223 (7th Cir.1990) (Rule 11 does not oblige counsel to amend complaint as new evidence surfaces); Samuels v. Wilder, 906 F.2d 272 (7th Cir.1990) (Rule 11 does not require attorneys to revise existing pleading to conform with newly discovered information).
 
 
 28
 However, the issue here is whether there was any merit to Lacey's continued assertion that Parrish had a viable claim for the unpaid portion under the 1981 contract after full payment of the notes, or whether Lacey should have voluntarily dismissed the action. In this context, we look to whether it was unreasonable for Lacey to oppose the Patels' motion for summary judgment and to file a cross-motion for summary judgment after the notes had been paid in full. Lacey's signature on these papers was a certification that to the best of her knowledge, information, and belief formed after reasonable inquiry, they were well grounded in fact and warranted by existing law. Fed.R.Civ.P. 11.
 
 
 29
 Under the 1988 compromise, the Patels agreed to fulfill a number of promises, which we need not repeat here. In return, Parrish agreed not to hold the Patels to full payment under the 1981 contract--which would substantially reduce the unpaid purchase price. Under Parrish's theory of the case, the Patels had bargained for the reduced payment on condition they fulfill these obligations. Because the Patels did not live up to their end of the bargain, they were no longer entitled to the reduced price. Payment of the mortgage notes in full at a later date would constitute only partial performance under the contract terms.
 
 
 30
 We do not find this argument to be wholly without merit. The Patels did not demonstrate at the district court that they were not in default. Nor did the Patels assert an affirmative defense, such as that this provision was unconscionable or that the reinstatement was a penalty and therefore unenforceable. Therefore, the court's imposition of sanctions on this ground was an abuse of discretion.
 
 
 31
 Without prompting by the parties, we question whether a claim could have been made that Judge Watt's March 1991 order in the Illinois proceeding, directing Parrish to convey title to the Patels, embraced a decision that the Patels had fully performed by paying off the mortgage notes. Had Judge Watt ruled that the payment constituted full performance under the 1988 agreement, his order would be res judicata at that stage. Because the parties did not make this argument on appeal, nor did Judge Beatty rely upon Judge Watt's order in reaching a decision on the merits, we need not resolve that issue here.
 
 
 32
 C. Was Lacey's position warranted under Illinois forfeiture law.
 
 
 33
 Judge Beatty admonished Lacey for her position because "the Fifth District Appellate Court had spelled out the law in Illinois with regard to forfeitures of contracts for the sale of real estate."[5] Parrish, No. 90 3356 WLB, slip op. at 11. Apparently, Judge Beatty believed Lacey's position in the federal case was not warranted by existing law in Illinois with respect to forfeiture. Whether this basis for sanctions is supportable is intertwined with Judge Beatty's decision on the merits. Judge Beatty held that Parrish was collaterally estopped from re-litigating the balance of equities and that he had alleged no new facts in his complaint or motion for summary judgment that would change the equities since the time of the state court judgment. Judge Beatty concluded that the equities overwhelmingly favored the Patels here, where Parrish had already received the full benefit of his bargain and had suffered no "actual" damages. Where a district judge makes an error of law in assessing the legal merits of the party's case, that error may constitute an abuse of discretion. In re Ronco, 838 F.2d at 217.
 
 
 34
 The circuit court action was for forcible entry and detainer. Section 9-102(a)(5) of the Code of Civil Procedure provides for forcible entry and detainer against a vendee who, having obtained possession of lands or tenements under an agreement to purchase, fails to comply with the agreement and withholds possession after notice from the person entitled to possession. Ill.Rev.Stat. ch. 110 p 9-102(a)(5). Illinois courts do not look upon contract forfeitures with favor. Myers v. Popp Enterprises, Inc., 576 N.E.2d 452, 455 (Ill.App.Ct.1991) (citing Jones v. Seiwert, 518 N.E.2d 394 (Ill.App.Ct.1987)). Under Illinois law, "[a] party seeking to enforce a forfeiture provision must prove that the right to forfeiture clearly and unequivocally exists and that the exercise of the right will cause no injustice." Myers, 576 N.E.2d at 455. In this context, Illinois courts balance the equities to determine whether forfeiture is in the interest of justice. See Aden v. Alwardt, 76 Ill.App.3d 54, 59, 394 N.E.2d 716, 719 (1979).
 
 
 35
 Parrish's federal action was for breach of contract. Parrish alleged that the Patels had failed to fulfill their promises under the 1988 agreement after October 3, 1988 and therefore must pay for the property in accordance with the 1981 agreement. Parrish did not seek forfeiture of the Patels' interest in the real estate. An action for breach of contract is an action at law. In this context, a court must interpret the express language of the contract to determine whether the defendant has breached any of the contractual provisions. The court may also consider any affirmative defenses raised by the defendants, including waiver of strict compliance. However, a simple breach of contract action that does not involve the forfeiture of property would not call for a balancing of the equities analysis. Because forfeiture of the real estate is not at issue in the federal action, Lacey's understanding of Illinois law with respect to forfeiture is irrelevant. Therefore, the court's imposition of sanctions--to the extent it is based upon the forfeiture-equities issue--was an abuse of discretion.[6]
 
 
 36
 D. Was the federal action designed to harass the Patels?
 
 
 37
 And finally, Judge Beatty found that the filing of this action could only have been designed to harass the Patels. The theory of the complaint was not frivolous and rested upon a strict reading of the agreements between the parties. The defense of waiver was not so apparent that it could not be contested in good faith, and was not relied on by the district court. Indeed, bringing the action may well have hastened the Patels' full payment of the mortgages. Under the circumstances, we hold it was an abuse of discretion to find the purpose of harassment as a basis for sanctions.
 
 
 38
 In conclusion, we reiterate that sanctions would have to rest upon a determination that Lacey violated her certification as to some pleading, motion or other paper, "that to the best of [her] knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose[.]" Fed.R.Civ.P. 11. Based on the discussion above, we conclude that there was an abuse of discretion in imposing Rule 11 sanctions in this case.
 
 III.
 
 39
 Because sanctions were inappropriate, we need not consider Lacey's challenge to the amount awarded.
 
 
 40
 Accordingly, we REVERSE the district court judgment insofar as it awards sanctions against Ms. Lacey. The parties will bear their own costs.
 
 
 
 [1]
 Federal jurisdiction is founded on diversity of citizenship. Illinois law governs substantive issues
 
 
 [2]
 The Patels' complaint is not contained in the record before us
 
 
 [3]
 For example, Lacey submitted an affidavit from Stephen Ruppel, a former employee of the Patels. Ruppel attested to the Patels' failure to keep the premises in good repair. Affidavit of Stephen Ruppel dated May 22, 1990, Plaintiffs' Motion for Summary Judgment, R. 27, Ex. 7. Additionally, Lacey included a letter from Saline Valley, dated November 7, 1988, indicating that the property was not insured. Plaintiffs' Motion for Summary Judgment, R. 27, Ex. 5. Lacey submitted various letters, also indicating the inadequate condition of the premises, R. 27, Exs. 8-13, lease agreements between the Patels and certain third parties, dated June 16, 1989 and June 29, 1989. R. 27, Exs. 14-15, and a number of documents demonstrating the Patels failure to pay taxes on the property. Additionally, Lacey submitted an affidavit from James R. Humphrey, President of Bank South (formerly Saline Valley National Bank). Humphrey stated that Parrish continued to be personally liable under the two notes. Affidavit of James R. Humphrey, Appendix of Appellant at A94
 This overview of the exhibits demonstrates that Lacey had factual support for her position.
 
 
 [4]
 We think it would have been better practice, and might have saved some difficulty, if the complaint had candidly referred to the state court judgment and its effect on matters concerning the federal case
 
 
 [5]
 In particular, the appellate court addressed Illinois forfeiture law in two contexts--first, it decided that Parrish had waived his right to strict compliance; and second, it applied a balancing of equities in determining that forfeiture of the Patels' property interest at that time was not warranted under the circumstances. Because Judge Beatty declined to find that Parrish had waived his right to demand strict compliance, we do not address that point here
 
 
 [6]
 Judge Beatty apparently treated the federal action, based on reinstatement of the original contract as a type of "forfeiture." Arguably, Parrish demanded a "forfeiture" of the benefit of the 1988 compromise. Even if Illinois forfeiture law were applicable in this context, the "forfeiture" involved is not the same as at issue in the earlier action (for forfeiture of property) and hence Parrish would not necessarily be barred by issue preclusion